. JO B. ROBERTS ET AL. v. NAT SMITH ET AL.

(Case No. 5325.)

1. IMPERFECT TITLE. — If one party to an agreement promises to convey a certain tract of land, the party to whom the promise is given is not bound to receive an imperfect title to such land, or an estate in remainder after the determination of a life estate in another.
2. PROMISSORY NOTE — INTEREST. — A note was given due six months after date "*without interest*" on a contract, under which six months were allowed the makers of the note to perform certain stipulations necessary to the completion of the contract. *Held*, that the effect of the note was the same as if the words "*without interest*" had not been inserted, and that the note bore interest from the date of its maturity.

APPEAL from Grayson. Tried below before the Hon. Richard Maltbie.

This suit was commenced August 19, 1882, by Nat Smith and Belle Smith, his wife, against Jo B. Roberts and his wife, Florentha Roberts, to recover the amount of a promissory note, by defendants

to plaintiffs, dated March 8, 1879, payable six months from date, for $540.53, " without interest," and to foreclose a vendor's lien for its amount upon two tracts of land in Grayson county, for the purchase money of which it was given.

Defendants, by amended original answer, set up a written agreement contemporaneous with the note, and on the same sheet of paper, providing that it might be discharged by conveyance of an undivided one-eighth interest in certain land in Tennessee known as the Lankford homestead, which was to be valued by appraisers, and the difference between the appraised value and the note, paid by Smith or Roberts, as the case might be.

Defendant alleged a valuation under the contract showing $646.97 due to Smith in excess of the note sued on, and tendered a deed on its payment, claiming to have always been ready to carry out such contract.

Plaintiffs replied by supplemental petition that defendants had no interest in the Tennessee land except what Florentha Roberts had under the will of her deceased father, Lankford. That this was not an undivided one-eighth, but was subject to the life estate of her mother, Permelia Lankford, who was in possession of the premises.

They alleged that the valuation made was fixed upon the entire one-eighth interest, and in ignorance of the life interest of the mother, and that tender of performance was too late.

Defendants in reply claimed that the delay was due to plaintiffs' failure to furnish description of land for the deed as agreed, and to an extension of the time of performance, and that the condition of the title to the Tennessee land was known to plaintiffs at the time of making the contract.

The cause was tried before a jury, and plaintiffs, under the instruction of the court, recovered judgment for the amount of the note, $540.53, with interest from September 12, 1879, being $218.61, and for the foreclosure of the vendor's lien.

*A. E. Wilkinson* and *A. C. Turner,* for appellants, cited: Hopkins *v.* Crittenden, 10 Tex., 189.

*Hare & Head, Woods & Wilkins* and *F. C. Dillard,* for appellees, on the question of interest, cited: R. S., art. 2976; 2 Pars. on Notes and Bills (2d ed.), p. 392; Daggett *v.* Pratt, 15 Mass., 177; Hackenberry *v.* Shaw, 11 Ind., 392; Parvin *v.* Hoopes, 1 Morris, 294; Hor *v.* Nash, 1 Ia., 204.

On the sufficiency of the deed, etc., they cited: Short *v.* Abernathy, 42 Tex., 94; Dumas *v.* Hardwick, 19 Tex., 238; Smith *v.* Falwell, 21 Tex., 466; Baker *v.* Todd, 6 Tex., 273; Fleming *v.* Nall, 1 Tex., 246; Chevallier *v.* Buford, 1 Tex., 503; Vardeman *v.* Lawson, 17 Tex., 10; Greenwood *v.* Ligon, 10 Sm. & M., 615; Brown *v.* Gamon, 14 Me., 276; Clark *v.* Redman, 1 Blackf., 380; Watkins *v.* Rogers, 21 Ark., 298; Davidson *v.* Van Pelt, 15 Wis., 341.

WILLIE, CHIEF JUSTICE.— It does not seem to be disputed but that the contract between Smith and Roberts called for a valid and warranty title to the land in Tennessee, derived by Mrs. Roberts under the will of her father. Indeed, this is the construction placed by this court upon such words as were used in this contract, in describing the character of deed that the appellants were to make to Smith for the Tennessee land. Vardeman *v.* Lawson, 17 Tex., 10.

At the time of making the contract the parties supposed that the appellants could convey a perfect title to the land, and did not know that Mrs. Roberts' interest was subject to the life estate of her mother. They contracted under this mutual mistake of facts, and it was the clear intention that only an absolute conveyance of a perfect title could have been contemplated by them.

It was the duty of the appellants to discharge the note sued on according to the agreement between the parties — to tender a good and full title to the land so soon as it was appraised. It was not the duty of the appellees to perfect the title in Roberts and wife, or to see that the interest of Mrs. Roberts was properly appraised. If an imperfect title was offered them they were not bound to receive it, and when it became certain that it was out of the power of the appellants to convey a good title, then the appellees were authorized to bring suit upon the note. The contract was one which Roberts and wife could discharge at maturity by conveying a fee-simple title to the Tennessee land. In case of a failure to do this, the right of the appellees to enforce the payment of the note in money became absolute.

They did not tender any title whatever down to the date of the commencement of the suit, nor did they down to the date of the judgment tender such a title as Smith was bound to accept. They offered no deed whatever till they pleaded to this action, and then, instead of a deed conveying a fee-simple title, they tendered one conveying an estate in remainder after the determination of a life estate in another. Upon no principle of law or equity were the plaintiffs below deprived of their right to recover upon the note by the tender

of an incomplete title, more than four years after the note had matured, and nearly a year after suit brought for the recovery of the money due upon it; and this more especially where the tender was upon condition that the plaintiffs should be compelled to pay for the defective title the same price they had agreed to give for a complete and perfect fee-simple estate in the land.

There is nothing in the point taken that the payment of the money had been indefinitely extended by what occurred between Smith and Roberts about the time the note fell due. At that time neither of the parties supposed that Mrs. Roberts' title to the land was not a perfect title. The extension was asked because Roberts could not give a description of the land in his deed for want of the field-notes. The extension was therefore given for the purpose of allowing him time to procure a description of the land, and lasted no longer than was necessary for that purpose. It would be unreasonable to suppose that either party had in view an extension for the purpose of allowing the appellants time to prepare and offer an imperfect title to the land, or that it would have been given, had it been known that such was the only title the appellants would have to offer at any time. As this was the character of title finally tendered, we cannot see what importance can possibly be attached to the supposed extension.

The note sued on was payable six months after date without interest. It is settled law that where a contract bears an agreed rate of interest from date, it will bear the same rate after maturity. But it has never been held that if a note expressly provides that it shall carry no interest from date, that interest shall not be calculated upon it after maturity. It would require an express contract in plain terms to this effect, or the circumstances should clearly demand such a construction, to deprive the payee of his interest on such a contract after it became overdue. "When expressed, the words used by the parties determine their rights; and, if they require construction, this is generally, if not always, in favor of interest." 2 Pars. on Bills and Notes, 392.

The meaning of the present note is the same as if the words "without interest" had not been used. In that event it would have borne interest from maturity, but not from date. The parties to the note were making a settlement and agreement in which six months were to be allowed to the makers of the note to perform their part of the stipulation. It was important that the makers should have such reasonable time within which to ascertain the value of the land with which the note was to be discharged, and to

make a deed for it to the payees as provided in the agreement. It must have been important to the payees that the execution of the deed should not be indefinitely postponed. These circumstances account for the insertion of the words " without interest " in the note. They were, doubtless, inserted to give assurance that no interest should run against the makers during the time within which they were to make the title, but not to postpone indefinitely the right of the payees to receive the deed, and at the same time deprive them of all interest upon their money during the delay. The terms of the note not providing against interest after maturity, and the circumstances of its execution not demanding that it be construed so as to deprive the plaintiffs of such interest, but quite the contrary, we think there was no error in finding for the plaintiffs the amount of interest incorporated in the judgment.

What we have already said as to the extension claimed by the appellants disposes of that point so far as it affects the question of interest. The jury, under the charge of the court, found that no postponement had been agreed to by Smith, and this finding is fully warranted by the facts. Even if the extension had been given, we have seen that its purposes were never fulfilled by the delivery or tender of a sufficient deed. Hence, we think, the appellants should pay interest as if no extension of time had been allowed — that is, from the maturity of the note.

There is no error in the judgment, and it is affirmed.

AFFIRMED.

[Opinion delivered April 28, 1885.]