Argued at Pendleton October 27, 1931; reversed January 19, 1932

## HASKIN ET AL. *v.* GLASER ET AL.

(6 P. (2d) 1092)

*W. C. Winslow,* of Salem, for appellants.

*George R. Wilbur,* of Hood River, for respondents.

BELT, J. On September 26, 1924, plaintiff Dale M. Haskin and defendant F. T. Glaser entered into a contract for the sale of five pairs of foxes by Haskin to Glaser.

The contract provided that the foxes were to be standard bred, advanced, registered quality silver fox, Dalton-Tuplin strains, and also one-half interest in a pair of such foxes to be selected at ranch for the breeding season of 1925, for which Glaser promised to pay Haskin the sum of $6,750. A portion of the price was paid in cash and notes given by Glaser to Haskin for the balance. The notes were subsequently paid, with the exception of one for $2,482. When the time arrived for delivery under the original contract, a controversy arose between the parties over the foxes to be delivered. As a result, Glaser brought an action against Haskin in the circuit court for Hood River county.

The parties met at Jefferson and, after negotiations, settled the controversy and, on January 22, 1926, embodied this settlement in the following writing:

"Jefferson, Oregon.. January 22, 1926.

"To adjust arguments and settle complaint (F. T. Glaser of Jefferson vs. Dale M. Haskin of Hood River) D. M. Haskin guarantees to F. T. Glaser that original five pair will produce 10 pups or, if they don't Haskin will make up balance which will pass inspection during the spring of 1926, which will register.

"Haskin agrees to guarantee the original 5 pair and their increase for the years 1926, 1927, 1928, not to go sampson.

"Haskins agrees to make good young female from pen 34 tattoo # 00 right 1 Z left, and young big male tattoo # which is to be mated with same if either or both go sampson.

"Haskins agrees to replace pair given in place of ½ interest in pair whose tattoo # is     and bad male which did not register tattoo #.

"Haskins agrees to not charge any interest or ranching charges on said foxes and agrees to take new note for balance due on said foxes payable on or before Dec. 1—1926 without interest.

"Accepted and signed by Dale M. Haskin.

"F. T. Glaser.

"Witness Mary Glaser.

"Male fox 9243 differs from paper registration.
"Female 9840 differs from paper registration.

"D. M. Haskin."

Pursuant to the terms of the settlement Glaser accepted certain foxes delivered to him at Jefferson, Marion county, Oregon. In January, 1927, Glaser instituted an action for $4,275, because Haskin's breach of his guaranty contained in the settlement contract, in which action Glaser alleged that:

(1) Of the eleven pups that were produced only five passed registration; and (2) that three of the old foxes had "gone sampson" (i. e. lost their guard fur); and (3) that Haskin waived the giving of a new note.

In his original answer, besides (1) averring tender of other foxes in replacement of those not eligible to registration, (2) denying the sampson condition of the three old foxes, (3) denying the new note provision, (4) alleging that said contract of settlement had been altered by erasing the words, "make good (replace).", and substituting instead the word "guarantee", and (5) alleging that, because of Glaser's breach of the contract by not giving the new note provided for therein, defendant had rescinded the contract, Haskin alleged a counterclaim based upon the execution and delivery of said note for $2,482.

In placing said counterclaim, as paragraphs II and III thereof, Haskin made the following allegations:

## "II.

"Plaintiff is the owner and holder of said note, and no part of the same has been paid, neither principal nor interest, and there is now due thereon from the plaintiff to the defendant the sum of $2,482.00 as principal, and six per cent interest thereon from October 1, 1925, to this date, amounting to $259.77, or a total sum of $2741.77, together with accruing interest.

## "III.

"Plaintiff has employed an attorney to prosecute this action, and has agreed to pay a reasonable fee for such attorney's services, and alleges that such reasonable fee is $275.00."

In Glaser's reply, the execution and delivery of said note were expressly admitted, but said paragraphs II and III were denied.

On November 22, 1927, the case was called for trial. On that day, before trial, an amended answer was filed by Haskin omitting said defense of material alteration and also omitting said counterclaim.

The trial resulted in a judgment in favor of Glaser for $3,150. Upon appeal to this court, said judgment was affirmed: *Glaser v. Haskin*, 127 Or. 523 (272 P. 890). The mandate was received by the clerk of Hood River county on the 21st day of January, 1929. On the 23d day of August, 1929, executions were issued on said judgment, one of which was directed to the sheriff of Hood River county and the other to the sheriff of Yamhill county.

The present suit is one instituted on the 23d day of August, 1929, by said Dale M. Haskin, the defendant in the action above mentioned, and Minerva D. Haskin, as plaintiffs, against F. T. Glaser, the plaintiff in said action, and William H. Edick, as sheriff of

Hood River county, and George W. Manning, as sheriff of Yamhill county, Oregon, as defendants. The relief sought by this suit is a determination and decree to the effect that said note for $2,482, from Glaser to Haskin, bears interest from its maturity date; that Glaser be obliged to receive said note in payment pro tanto on said judgment above mentioned; that said judgment be cancelled and that said sheriffs be enjoined from making levy or sale upon the executions theretofore named upon said judgments.

The basis of this suit is the claim that fraudulent representations were made by the attorney for Glaser in his argument to the jury, and also in his brief upon appeal to this court in said action; that plaintiffs herein relied upon said representations to their damage and injury.

The allegations of plaintiffs' complaint in that respect are as follows:

"During the course of said trials in the circuit court and in the supreme court the said note was frequently mentioned in evidence, and in arguments of counsel; and the defendant Glaser freely admitted his liability thereon, and his counsel repeatedly stated and admitted to the court, and argued to the jury, that his client was liable to the plaintiff for the full amount of money due upon said note, and that he was ready to pay the same out of and against the claim then in litigation against the plaintiff, and stated to the jury and to the court, and again in his brief to the supreme court, and in his oral argument to the supreme court, that if his client, Glaser, should obtain judgment against the plaintiff, that the amount of money due upon said note could be offset against said judgment. That such statements and admissions by the defendant Glaser and his said counsel to the courts and jury were made freely and voluntarily and repeatedly and were influential in obtaining said judgment against the

plaintiff, and were prejudicial to the defense made by the plaintiff in said litigation, and said courts and jury accepted said statements and admissions as made in good faith and as representing the honest intention of the said defendant and were considered by said courts and jury in arriving at their verdict and decision and in rendering judgment.

"That the said statements and admissions were not made in good faith, and said defendant did not intend to have them performed and did not plan and intend that the amount of money due upon said note would be offset and credited against said judgment, but intended to and did deceive the circuit and supreme courts, and the jury, and practiced fraud upon said courts and jury, in this: That whereby said note, aforesaid, bore interest at the legal rate of 6% from its maturity date, said defendant did not intend to pay interest upon said note at any rate or for any time, but neither the said defendant nor his counsel ever divulged said secret intention and plan until after the supreme court had affirmed the judgment.

"Plaintiffs relied as they had a right to rely upon the statements and conduct of defendant Glaser as hereinbefore set out, and believed that the various promises would be fulfilled, and did not know that the said defendant was presentiing a false position to the plaintiffs and to the courts, and was greatly deceived thereby, and has been disappointed and embarrassed; that they had a right to have this judgment canceled and removed from the record in the month of January, 1929, as set out in paragraph VII above; that they are large property owners and said judgment stands as a lien against all of their property and has so stood since January, 1929, which fact has greatly embarrassed the plaintiffs in their business and has affected their credit; that it is their right to have said judgment released and canceled on the basis set out in paragraph IX, and it will be inequitable and permitting a deceit upon this court and upon these plaintiffs if the defendant Glaser is not now obliged to do as he has so long held out to be his intention and plan."

A trial herein resulted in a decree for plaintiffs, from which defendants appeal.

The decisive question herein is whether plaintiffs have proven fraud. No other ground of equitable cognizance is assigned.

■ The declarations or representations attributed to defendant Glaser are promissory in their nature. This being so, their truth or falsity must be determined as of the time when made: *Ore City Co. v. Rogers*, (Tex. Civ.) 190 S. W. 226; *Mandelbaum v. Goodyear Tire & Rubber Co.*, 6 Fed. (2d) 818. Applying this rule to the representation made during the argument to the jury, we find nothing whatever to indicate that defendant Glaser did not then intend to allow an offset upon his claim against plaintiff Haskin, because of the note in question. On the contrary, the express admission in Glaser's reply in said action of the execution and delivery of said note, which admission was rendered ineffective only by Haskin's action in filing an amended answer, affirmatively shows that at that time Glaser intended to allow said note as an offset or counterclaim.

Glaser's brief referred to in the complaint herein was filed in this court on May 21, 1928. The statement in said brief that such an offset would be allowed is the subject of a proposition by Glaser's attorney in a letter to Haskin's attorney, dated April 17, 1929, confirming said statement. In this letter Mr. Glaser's attorney says:

"I feel that subsequent events would justify us in changing our position, but I am not going to do it. I said in the brief to the supreme court that Haskins could have credit for this note any time he wanted it, and we will stay by that position; and are willing to

satisfy the judgment upon receipt of a remittance covering the difference between the note and the judgment.''

This dissipates any suggestion that, at the time of the filing of the brief mentioned, Glaser did not intend to allow said note to be used as an offset upon his judgment.

Plaintiffs herein claim that Glaser has changed his position with reference to the question of interest. It is stipulated in the case at bar that during the trial of the action at law neither party referred to that matter. Taking that stipulation at its face value, it cannot be urged that Glaser offered to allow interest upon said note as part of the offset mentioned.

■■ We conclude that the declaration or representation made by Glaser was made in good faith.

There is another reason why plaintiffs have failed to establish fraud. It is because they have utterly failed to show that they relied in any way upon the statement in question. It would have been the logical and natural thing for D. M. Haskin, if he relied upon the statement when it was made to the jury, to have asked the trial court to reinstate his counterclaim, and instruct the jury in conformity thereto. This he did not do. Instead, he permitted the sheriff of Hood River county to make diligent search for Glaser in an attempt to serve a summons upon him in an action at law based upon the identical note in question, which action at law was instituted on the day following Haskin's withdrawal of his admitted counterclaim based upon that note. The record discloses that the deputy sheriff sat in the court room with the summons just mentioned in his possession for service and heard the argument of Glaser's attorney wherein the offer was made upon

which this suit is based. This indicates an inclination to oppress Glaser with unnecessary litigation. He who seeks equity must do equity.

The record affirmatively discloses that Glaser owned property from which any judgment on the note in question could be realized. There is no claim to the contrary. In this court, it would have been easy for him to have called attention to Glaser's offer in said brief and to have asked this court to take said note into consideration in case of affirmance. Nothing of that kind was done.

There is still another element of fraud unproved in the case at bar and that is that plaintiffs have acted to their prejudice or damage because of said statement. They allege that the judgment lien has affected their credit, but there is not one word of testimony in the record tending to support that allegation. In fact, as to the amount or kind of property plaintiffs own, or whether any of it has been in any way affected by Glaser's judgment, the record is so unsatisfactory that their allegation in that regard cannot be upheld.

The testimony convinces the writer that the jury did their duty and disregarded the note in question when they fixed the amount of damages sustained by Glaser. One of the jurors, as a witness for Haskin, so testified. With this question, we are not concerned here and it is mentioned only because of plaintiffs' allegation that Glaser practiced fraud upon the courts and the jury. We hold this allegation to be unwarranted and unsupported by the testimony.

The correspondence which has been introduced in evidence herein discloses a claim on Glaser's part to the effect that he, Glaser, sold an offspring of one pair of foxes for which Haskin had failed to give transfer papers; that the purchaser of said offspring

was unable to register the same in his name because Haskin had notified The National Fox Breeders Association not to so register them. Glaser claims that this constitutes another breach of his contract by Haskin to Glaser's damage. This claim appears to have matured on December 15, 1928. This was a month and a half after the case had been argued in this court.

■ On any other issue, the writer would not cavil about whether a judicial determination should be in law or in equity; but when fraud is charged as the sole basis for invoking jurisdiction, it should be definitely proved. In the case at bar, this charge of fraud not only involves defendant Glaser but also his attorney. To sanction the exercise of equitable jurisdiction herein would be to impliedly hold that this charge has been established. Such holding would not be conformable to the record as we understand it. Most unjustly, it would place a stigma upon defendant Glaser and his attorney, which cannot be measured in monetary terms.

Section 6-102, Oregon Code 1930, provides that no cause shall be dismissed for having been brought on the wrong side of the court, and that the plaintiff shall have the right to amend his pleadings to obviate any objection on that account.

In the opinion of the writer, the complaint in the case at bar does not state a cause of action as distinguished from a cause of suit in equity, but the record as a whole discloses that plaintiff D. M. Haskin has a legal demand against defendant Glaser and that defendant Glaser claims an offset or counterclaim thereto, because of an alleged breach of contract occurring since the case of *Glaser v. Haskin* was tried. Upon appropriate pleadings, these issues can be tried in an action at law.

■ The legal demand of Haskin is evidenced by the note in suit, of which the following is a copy:

"$2,482.00          Newberg, Oregon, Sept. 26, 1924.

"On or before Oct. 1, 1925, after date, without grace I promise to pay to the order of Dale M. Haskins two thousand four hundred and eighty-two dollars for value received, without interest at rate of no per cent per annum until paid. Principal and interest payable in U. S. Gold Coin at U. S. National Bank of Newberg and in case suit or action is instituted to collect this note or any portion thereof I promise to pay such sum as the court may adjudge reasonable as attorney's fee in said suit or action.

"No.      Jefferson,
"Due      Ore.          F. T. GLASER."

In defendants' brief, it is not urged that notes containing the mere phrase "without interest," if the due date is deferred for any considerable time, do not bear interest from maturity. It is urged, though, that the note in suit provided expressly that it is without interest until paid. These words, "until paid," are part of the printed form of the note. Immediately following them, the following printed words appear, "Principal and interest payable in U. S. Gold Coin." We assign to the words "until paid" the meaning that both parties attributed to them when the note was executed, namely, that these words refer to the time when, by its express terms, the note should be paid, which is the date of its maturity, and we interpret the succeeding phrase above quoted as meaning that, in case of nonpayment at maturity, the principal shall bear interest therefrom, and both principal and interest shall be paid in gold coin. This construction harmonizes all parts of the instrument, gives effect to each clause, and results

in the construction that the note in suit bears interest at 6 per cent per annum from October 1, 1925. Such was the holding of the learned trial judge, and we approve it.

The following authorities support the view that, where the date of maturity is deferred for an appreciable time, the use of the term "without interest" in a note does not avoid interest on the principal at the statutory rate from maturity: *Roberts v. Smith,* 64 Tex. 94 (53 Am. Rep. 744); *Smolikowski v. Laibe,* 170 Ill. App. 181; *Wood v. Corl,* 45 Mass. (4 Metc.) 203; *McKinlay v. Blackledge,* 3 N. C. (2 Haywood's) 28; *United States Nat. Bank of Portland v. Waddingham,* 7 Cal. App. 172 (93 P. 1046); *Pierpoint v. Pierpoint,* 71 W. Va. 431 (76 S. E. 848 Ann. Cas. 1914C 241, 244 43 L. R. A. (N. S.) 783).

It is ordered that the decree of the circuit court be reversed and that this cause be remanded for further proceedings not inconsistent herewith. Each party will pay his own costs and disbursements.

ROSSMAN and CAMPBELL, JJ., not sitting.

RAND, J., dissents.