Argued and submitted April 7, Court of Appeals affirmed and case remanded to trial
court May 27, 1987

## RILEY HILL GENERAL CONTRACTOR, INC.,
*Petitioner on review,*

*v.*

## TANDY CORPORATION,
dba Radio Shack,
*Respondent on review.*

(CC 84-02-19,378-L; CA A35863; SC S33551)

737 P2d 595

Gary J. Ebert, of Yturri, Rose, Burnham, Ebert & Bentz, Ontario, argued the cause and filed the petition for petitioner on review.

Frank M. Parisi, of Spears, Lubersky, Campbell, Bledsoe, Anderson & Young, Portland, argued the cause for respondent on review.

JONES, J.

## JONES, J.

Plaintiff, Riley Hill General Contractor, Inc., sought compensatory and punitive damages on claims labeled "fraud,"[1] "breach of warranty" and "negligence" against defendant, Tandy Corporation, arising out of plaintiff's purchase of a computer that was manufactured and sold by defendant doing business as Radio Shack. Defendant answered with a general denial of the claims and raised an affirmative defense of contributory fault. The trial court instructed the jury that:

> "You are instructed that the law recognizes a presumption against fraud and this presumption against fraud must be overcome by *clear and convincing evidence.*

> "The Party alleging fraud must thus bring forth evidence to prove it, and may not rely upon mere suspicious circumstances or equivocal conduct.

> "Thus, there must be a certain quality of evidence to overcome the presumption against fraud even though the burden of proof remains in this case as in all civil cases, *proof by a preponderance of the evidence.*" (Emphasis added.)

■ Defendant excepted to these instructions. The jury returned a verdict for plaintiff. Defendant appealed, and the Court of Appeals reversed and remanded for a new trial because of the inconsistency in the trial court's jury instructions on the burden of proof. *Riley Hill General Contractor v. Tandy Corp.,* 82 Or App 458, 728 P2d 577 (1986). We allowed review to decide whether the burden of persuasion[2] for common law deceit should be by "clear and convincing evidence," by a "preponderance of the evidence" or by a combination of both concepts. We hold that the burden of persuasion for common law deceit requires the proponent to prove each of the elements of deceit by clear and convincing evidence, but that general or punitive damages arising out of that deceit

---

[1] Although plaintiff used the term "fraud," plaintiff alleged the more specific claim of deceit. *See* Prosser & Keeton, Torts 728 (5th ed 1984), and discussion *post* at 405-06.

[2] OEC 305 provides:

"A party has the burden of persuasion as to each fact the existence or nonexistence of which the law declares essential to the claim for relief or defense the party is asserting."

need be proved only by a preponderance of the evidence. The Court of Appeals is affirmed.

Riley Hill, the sole owner and operator of Riley Hill General Contractor, Inc., also owned a number of small businesses. He desired to acquire a computer system to assist in his bookkeeping and accounting to better enable him to conduct his businesses and to keep track of cash flow within his various businesses. Hill initially purchased a single-user computer system from Tandy Corporation. Because this system was slower than he desired, Hill decided to expand to a more complex computer system. He also acquired this system from Tandy Corporation.

Hill's experience with the new computer was unsatisfactory. After a number of complaints about the equipment and the computer programs and a number of attempts by Tandy Corporation to fix the computer, including replacement of all the hardware, Tandy Corporation offered to refund the purchase price. Hill refused and filed this civil action.

In this action, plaintiff alleged that Tandy Corporation had been warned by the company that tested the computer system before marketing that it was necessary to provide for file lock out within the accounting program to avoid corruption of the data being put in the computer file. It alleged that Tandy Corporation marketed this computer with the knowledge of the potential for such corruption to take place and with the knowledge that the defects could be corrected if Tandy Corporation had taken the time to do so. Plaintiff also alleged that he had considered other computers and relied completely on Tandy Corporation's representative's statements as to the reliability of the computer and programs and their suitability for Hill's intended business use.

At the conclusion of the trial, the judge gave the above-quoted instruction to the jury. The Court of Appeals reversed the trial court, holding that the instructions were inconsistent because the jury was told that the burden of proof in "fraud" cases is by both clear and convincing evidence and by a preponderance of the evidence. As mentioned, the Court of Appeals held that the instruction was reversible error, because it was not possible to tell from the verdict whether the jury used the correct clear and convincing evidence standard

or the incorrect preponderance of the evidence standard. 82 Or App at 461.

Before we set forth the level of proof required in civil actions for deceit, we address the origins and meanings of the terms "preponderance of evidence" and "clear and convincing evidence."

## THE ORIGINS AND MEANINGS OF "PREPONDERANCE" AND "CLEAR AND CONVINCING" EVIDENCE

"Preponderance" derives from the Latin word "praeponderare," which translates to "outweigh, be of greater weight." 8 Oxford English Dictionary 1289 (1933). With regard to the burden of proof or persuasion in civil actions, it is generally accepted to mean the greater weight of evidence. At one time in the history of English law, the translation received a literal interpretation, with heads of witnesses being counted on each side, and each item of testimony receiving a quantitative value or weight. *See* Millar, in Engelmann, History of Continental Civil Procedure 41-49 (1927); 9 Wigmore, Evidence 424-31, § 2498 (Chadbourn rev 1981); 1 Holdsworth, History of English Law 302-04 (3d ed 1922). The term suggests to the jury that the evidence should be weighed on a scale and, frequently, trial judges will speak of weights and scales in explaining to jurors under this standard that they cannot speculate or guess what happened but that a party with the burden of persuasion in a civil case must prove what probably occurred. Uniform Jury Instructions (Civil), Nos. 21.01, 21.02 (Oregon CLE 1986), read, respectively:

> "A party has the burden of proving by a preponderance of the evidence any claim made in that party's pleadings. In the absence of such proof, the party cannot prevail as to that claim."

> " 'Preponderance of the evidence' means the greater weight of evidence. It is such evidence that, when weighed with that opposed to it, has more convincing force and is more probably true and accurate. If, upon any question in the case, the evidence appears to be equally balanced, or if you cannot say upon which side it weighs heavier, you must resolve that

question against the party upon whom the burden of proof rests."[3]

Mellinkoff, in his extensive work, The Language of the Law (1963), does not specifically trace the origins of the terms "preponderance of the evidence" or "clear and convincing evidence." However, he asserts that certain words, such as "plaintiff," "defendant," "fee simple" and "lessee," are terms of art with a specific meaning, *id.* at 17, but that other language of the law is better characterized as equivocal because "there is a deliberate choice of the flexible," *id.* at 21. Among a sample of words and phrases which are often used "because they are flexible or despite their flexibility," are the words "clear and convincing," *id.* at 21, and he lists among "the cats and dogs of law language, defined and redefined, but not more precise for all of that," the words "preponderance of the evidence," *id.* at 385. Thus, he tells us what we already know, that these terms are not precise standards but are words that do no more than characterize evidence. *See Byers v. Santiam Ford, Inc.*, 281 Or 411, 420 n 2, 574 P2d 1122 (1978) (Lent, J., specially concurring).

We now examine why there are two somewhat parallel words, "clear" and "convincing," for a separate standard of proof. Mellinkoff traces this repetition of words to the origins of the English language. He explains that the English language started with the Celts when they entered the British Isles long before the birth of Christ and that Celtic was the dominant language of Britain until the Roman occupation in the first century A.D. The Latin interlude ended when the last Roman legions withdrew in 407 A.D.[4] The first Anglo-Saxon

---

[3] We note that the uniform jury instruction still refers to the former usage, "burden of proof." Since January 1, 1982, the statutory terminology is "burden of persuasion." OEC 305, set out *ante* at note 2.

[4] Kipling's poetry in *The River's Tale* is more picturesque:

"And North Sea war-boats, painted and gay,
Flashed like dragon-flies Erith way;
And Norseman and Negro and Gaul and Greek
Drank with the Britons in Barking Creek,
And life was gay, and the world was new,
And I was a mile across at Kew!
But the Roman came with a heavy hand,
And bridged and roaded and ruled the land,
And the Roman left and the Danes blew in—
And that's where your history-books begin!"

Rudyard Kipling's Verse 744 (Inclusive ed 1926).

invaders in the middle fifth century encountered Celtic language, not Latin. Mellinkoff, *supra* at 37. He comments that, although the Celtic influence on the language of the law is slight, the period of the mingling of the Celts with their Anglo-Saxon conquerors does supply a clue to the origin of one peculiarity of our law language, which provides two words for one thought. He writes:

> "One of the sources of tautology [that is, a needless repetition of words] is the prolonged presence of two languages side by side. England, for example, is peppered with place names which would read *Hill-hill,* or worse, except that the first *hill* is Celtic (*bre* or *cruc* or *penn*) and the other Old English (*hyll*), for instance, names like *Breedon-on-the-Hill, Churchill, Penhill, Pendle Hill.* It has been suggested that these formations indicate not knowledge but ignorance: a misunderstanding, in which the invader thinks *penn* is a place name, and adds his own *hill* for identification." *Id.* at 39.

He concludes that the repetition is simply the result of a collision of languages and that "[t]his penchant of English for coupling with foreign synonyms may be traced from Celtic through Scandinavian, Latin, and French." He concludes that "It is by no means a complete explanation of law tautology, but the pattern begins early and stays late." *Id.* Mellinkoff continues his history of the language of the law:

> "A separate language called English gets its name from the invading Angles and dates from around 450 A.D. In that mid-century the Angles and other Teutonic raiders (Saxons and Jutes) left their homes in what is now Denmark and northern Germany and began a serious penetration of the British Isles. Their influence makes English still a predominantly Teutonic speech. In turn, this Teutonic speech is a branch of the hypothetical Indo-European language that also spawned Latin, and then French as a dialect of Latin. So that at a very early date what was later to be English and what was later to be French were related. * * *" *Id.* at 39.

As examples of the law's habit of doubling words, Mellinkoff, at 121, lists:

| French | English |
|--------|---------|
| devise | bequeath |
| infant | child |
| larceny | theft |
| marriage | wedding |
| property | goods |
| pledge | borrow |

He then comments that, sometimes for clarity, sometimes for emphasis and sometimes in keeping with the bilingual fashion of the day, English lawyers joined synonyms. A sampling of bilingual synonyms coupled in the law are:

> acknowledge and confess (Old English [OE]; French [F])
> act and deed (F or Latin [L]; OE)
> deem and consider (OE; F)
> final and conclusive (F; L)
> fit and proper (OE; F)
> free and clear (OE; F)
> give, devise, and bequeath (OE; F; OE)
> goods and chattels (OE; F)
> had and received (OE; F)
> in lieu, in place, instead, and in substitution of (F; F; OE; F or late L)
> keep and maintain (OE; F)
> maintenance and upkeep (F; E)
> made and provided (OE; L)
> mind and memory (OE; F)
> new and novel (OE; F)
> pardon and forgive (F; OE)
> peace and quiet (F; L)
> right, title, and interest (OE; OE; F)
> save and except (F; L)
> shun and avoid (OE; F)
> will and testament (OE; L)

*Id.* at 122.

■ Such a combination of languages is found in the "clear and convincing" standard of proof, although this pair of words does not repeat a single concept. Outside the law, a proposition may be very clear but unconvincing, and murky statements may be persuasive in the absence of criticism or contrary assertions. In short, "clear" describes the character of unambiguous evidence, whether true or false; "convincing" describes the effect of evidence on an observer.

"Clear" is a Norman French word which means "of words, statements, explanations, meanings: Easy to understand, fully intelligible, free from obscurity of sense; of a vision, concept, notion, view, memory, etc.; Distinct, unclouded, free from confusion." 2 Oxford English Dictionary, *supra* at 475. The use of the term "clear" by itself after the Norman Conquest could have created great confusion due to its close association with the native English word "clean,"

which meant "without anything left or omitted, without any exception that may vitiate the statement, without qualification wholly, entirely, quite absolutely." *Id.* at 482.

"Convincing" is an English word derived from the Latin "convincere." It means "to overcome, to conquer, convict; to overcome (a person) in argument, to prove wrong, confute; to cause (a person) to admit, as establish to his satisfaction, that which is advanced in argument; that which convinces, that convicts, proves guilty, that which brings conviction to the mind." *Id.* at 950-51.

The use of similar terms, one Norman French, one English, arose in English history around the time of William the Conqueror and the Norman Conquest in 1066. King William I encouraged and maintained the loyalty and obligations system which had bound subjects to the kings of England. He made great use of certain trusted Norman followers, but these prelates were required to rule within a native English framework of law and custom. William I, a Norman, recognized that the defeated English people were much more likely to accept their defeat and accept the new social order imposed by the conqueror if the defeated were not the only ones making adjustments. So successful was he in this endeavor that, in the last serious revolt of his reign, it was the Normans who rebelled and Englishmen who fought for the king. 23 Encyclopaedia Britannica 530-32 (1971).

William I wanted to keep the affairs of church and state separate. He was determined, as a matter of policy, that in his dominions the church would be subordinate to the state. While he was compelled to concede ample room to "the canons of the episcopal law," he insisted that the ecclesiastical courts assume no rights in England that they had not exercised in Normandy. Thus, he created a system of ecclesiastical and common law courts which used both the Norman French and English languages. Reppy, Ordinance of William the Conqueror 1-5 (1954).

William sent commissioners to hold his local courts. Not only did these men bring the king's authority more directly than ever before into the shire courts of England but, in their conduct of the cases over which they presided, they made use of a method of proof which was to have great influence upon English judicial practice at a later date. It was in these trials that, for the first time, use was consistently made

of the jury as a group of men appointed by the court to give a collective verdict upon oath. William I employed such juries consistently and, between 1066 and 1087, their use became a characteristic feature of his judicial administration. *See* Douglas, William the Conqueror: The Norman Impact Upon England 305-10 (1964). In furtherance of his use of the jury system, and as part of his assimilation policy, William I directed that, where possible, Norman French words be joined with Anglo-Saxon words for purposes of effectuating the law. 1 Pollock & Maitland, The History of English Law, chs 2, 3 (1895).[5]

---

[5] Kipling described the respect a Norman had for the Saxons:

"NORMAN AND SAXON
(A.D. 1100)

" 'MY SON,' said the Norman Baron, 'I am dying, and you
will be heir

To all the broad acres in England that William gave me
for my share

When we conquered the Saxon at Hastings, and a nice
little handful it is.

But before you go over to rule it I want you to
understand this:—'

" 'The Saxon is not like us Normans. His manners are
not so polite.

But he never means anything serious till he talks about
justice and right.

When he stands like an ox in the furrow with his sullen
set eyes on your own,

And grumbles, "This isn't fair dealings," my son,
leave the Saxon alone.'

" * * * * *

" 'But first you must master their language, their
dialect, proverbs and songs.

Don't trust any clerk to interpret when they come with
the tale of their wrongs.

Let them know that you know what they're saying; let
them feel that you know what to say.

Yes, even when you want to go hunting, hear 'em out if
it takes you all day.'

" * * * * *

" 'Appear with your wife and the children at their
weddings and funerals and feast.

Be polite but not friendly to Bishops; be good to all
poor parish priests.

Say "we," "us" and "ours" when you're talking instead
of "you fellows" and "I."

Don't ride over seeds; keep your temper; and *never you
tell 'em a lie!*' "

Rudyard Kipling's Verse, *supra* n 4 at 749-50 (emphasis in original).

In trying to understand the Norman French and English terms, of course, we need to examine not only their origins but also the usage given to them by judicial decisions.

## THE USE OF THE TERMS

Historically, the "clear and convincing" standard of proof

> "was first applied in equity to claims which experience had shown to be inherently subject to fabrication, lapse of memory, or the flexibility of conscience. Conceding the validity of policies which the parol evidence rule and the Statutes of Wills and Frauds were designed to carry out, the chancery courts compromised between becoming a mecca for the trumped-up prayer for relief and refusing altogether to mitigate the stern fulfillment of these policies in the law courts, by granting relief only in cases where the evidence in support of this type of claim was 'clear and convincing.' * * *" Note, *Appellate Review in the Federal Courts of Findings Requiring More than a Preponderance of the Evidence,* 60 Harv L Rev 111, 112 (1946).

The author of the above-quoted law review article notes that in jury trials of civil actions at law, the clear and convincing rule was applied to actions for fraud or deceit as well as to equitable defenses based on fraud or mistake. He concludes that one method of enforcing the demand for clear and convincing evidence available in appeals from jury verdicts is the approval of a charge to the jury which directs them to apply that level of proof or reversal for error where the charge does not incorporate it. *Id.* at 116-17, nn 43 & 44 (citing *Fidelity & Casualty Co. of N.Y. v. Genova,* 90 F2d 874 (CCA 6th 1937); *Kuhn v. Chesapeake & Ohio Ry.,* 118 F2d 400 (CCA 4th 1941)).

Many courts have recognized that the intermediate standard of "clear and convincing" evidence is applicable in appropriate civil cases. Then Chief Justice Warren Burger, in *Addington v. Texas,* 441 US 418, 424, 99 S Ct 1804, 60 L Ed 2d 323 (1979), wrote that this

> " 'intermediate standard, which usually employs some combination of the words "clear," "cogent," "unequivocal," and "convincing," is less commonly used, but nonetheless is no stranger to the civil law.' One typical use of the standard is in

civil cases involving allegations of fraud or some other quasi-criminal wrongdoing by the defendant. The interests at stake in those cases are deemed to be more substantial than mere loss of money and some jurisdictions accordingly reduce the risk to defendant of having his reputation tarnished erroneously by increasing the plaintiff's burden of proof." Citing *Woodby v. INS,* 385 US 276, 285, 87 S Ct 483, 17 L Ed 2d 362 (1966); McCormick Evidence § 320 (1954); 9 Wigmore, Evidence § 2498 (3d ed 1940).

Application of this intermediate standard permeates a line of United States Supreme Court decisions declaring that "clear and convincing" evidence is required in various quasi-criminal proceedings or where the proceedings threaten the individual involved with a significant deprivation of liberty or with a stigma.[6]

## THE LEVELS OF PROOF IN OREGON

Since the time of the first Deady Code, Oregon statutes have set forth the level of proof required in civil and criminal actions. *See* General Laws of Oregon, ch 9, § 835, pp 355-56 (Deady 1845-1864). Those standards are now codified at ORS 10.095(5) and (6), as follows:

"The jury, subject to the control of the court, in the cases specified by statute, are the judges of the effect or value of evidence addressed to them, except when it is thereby declared to be conclusive. They are, however, to be instructed by the court *on all proper occasions:*

"* * * * *

"(5) That in *civil cases* the affirmative of the issue shall be proved, and when the evidence is contradictory, the finding shall be according to the *preponderance of evidence;*

"(6) That in *criminal cases* a person is innocent of a crime or wrong until the prosecution proves otherwise, and guilt shall be established *beyond reasonable doubt;*" (Emphasis added.)

---

[6] *See, e.g., Santosky v. Kramer,* 455 US 745, 102 S Ct 1388, 71 L Ed 2d 599 (1982) (parental termination); *Addington v. Texas,* 441 US 418, 99 S Ct 1804, 60 L Ed 2d 323 (1979) (civil commitment); *Rosenbloom v. Metromedia,* 403 US 29, 91 S Ct 1811, 29 L Ed 2d 296 (1971) (libel action); *Woodby v. Immigration Service,* 385 US 276, 87 S Ct 483, 17 L Ed 2d 362 (1966) (deportation); *Chaunt v. United States,* 364 US 350, 81 S Ct 147, 5 L Ed 2d 120 (1960) (denaturalization).

■ Plaintiff contends that, under ORS 10.095(5), in a civil action, a plaintiff's burden can never be more than a preponderance of the evidence. We disagree.

■ In *Cook v. Michael,* 214 Or 513, 526-27, 330 P2d 1026 (1958), this court stated that there are three standards of proof: "a preponderance," "clear and convincing" and "beyond a reasonable doubt." Proof by a "preponderance of the evidence" means that the jury must believe that the the facts asserted are more probably true than false. To be "clear and convincing," evidence must establish that the truth of the facts asserted is "highly probable." "Beyond a reasonable doubt" means that the facts asserted are almost certainly true. This part of the *Cook* opinion has been endorsed repeatedly by this court. *See, e.g., Mutual of Enumclaw Ins. v. McBride,* 295 Or 398, 405-06, 667 P2d 494 (1983); *State ex rel Redden v. Discount Fabrics,* 289 Or 375, 383, 615 P2d 1034 (1980); *Barkens v. Stuyvesant Ins. Co.,* 255 Or 222, 224, 465 P2d 696 (1970); *Bausch v. Myers,* 273 Or 376, 379, 541 P2d 817 (1975); *Sheets v. B & B Personnel Systems,* 257 Or 135, 145, 475 P2d 968, 476 P2d 920 (1970).

In *Mutual of Enumclaw Ins. v. McBride, supra,* this court signaled that

"[t]he time may come when it is proper to address the question of the requirement of a higher level of proof in actions for common law fraud; but we decline to do so here because we disagree that the statutory provisions of fraud and false swearing are sufficiently similar to common law fraud as urged by defendants, nor do we think that to be the proper basis on which to decide this case." 295 Or at 403.

Acknowledging that "skepticism [is] often voiced regarding the practical importance of an intermediate measure of proof,"[7] this court nonetheless stated that

"ORS 10.095 requires the court 'on all proper occasions' to instruct the jury '[t]hat in civil cases * * * the finding shall be according to the preponderance of evidence' while 'in criminal cases guilt shall be established beyond reasonable doubt.' ORS

---

[7] *See, e.g., Byers v. Santiam Ford, Inc.,* 281 Or 411, 418-21, 574 P2d 1122 (1978) (Lent, J., specially concurring); *Hardwick v. Dravo Equipment Company,* 279 Or 619, 632, 569 P2d 588 (1977) (Lent, J., specially concurring); *Medak v. Hekimian,* 241 Or 38, 46, 404 P2d 203 (1965); *Transamerica v. Bloomfield,* 55 Or App 31, 40 n 5, 637 P2d 176 (1981).

10.095(5), (6). The 'proper occasion' for interpolating an intermediate measure of proof is in cases that are between 'civil' and 'criminal' and where what is to be established is akin to 'guilt.' "*Id.* at 405.

■ One reason for imposing the higher "clear and convincing" standard in a claim based on deceit is that the defendant is branded with something akin to guilt. In *Mutual of Enumclaw,* after conceding that setting the clear and convincing standard for "fraud" was *dictum* in *Cook v. Michael,* an assault case, this court said:

> "So well established is this rule that the commentary to OEC 305 states, '[i]n actions that allege fraud or gift, for example, the trier of fact must be persuaded by "clear and convincing evidence," which means that the truth of the facts asserted must be highly probable,' citing *Cook v. Michael, supra.* This is repeated in L. Kirkpatrick, *Oregon Evidence* 51 (1982). The dictum of *Cook v. Michael* has become the accepted practice in Oregon. Thus, while the preponderance standard is the rule in most civil cases, an exception to the standard is applied in civil cases of common law fraud." *Mutual of Enumclaw,* 295 Or at 403.

Prior to this court's decision in *Cook v. Michael,* the formulation of the "clear and convincing" language in this state ranged from the statement in *Elfelt v. Hinch,* 5 Or 255, 259 (1874), that "fraud cannot be presumed" and may only be deduced "from circumstances affording a strong presumption," through many reformulations of similar adjectives, such as "satisfactory evidence," "a clear preponderance," "clear and distinct" proof, "clear and conclusive" proof, "a preponderance of clear and satisfactory proof," "clear and explicit" proof, "clear, satisfactory and convincing" proof, "definite" proof, "clear and satisfactory" proof, proof that indicated "nothing short of cogency," "clear and convincing" proof, and "a clear and satisfactory preponderance."[8]

---

[8] *See, e.g., Keel v. Levy,* 19 Or 450, 452, 24 P 253, (1890) (circumstances of fraud must be of such a *satisfactory* character as to convince the mind of the trier of the fact that the transaction drawn into question was a sham and not what it purported to be); *Wimer v. Smith,* 22 Or 469, 486-87, 30 P 416 (1892) (defendants must *clearly and distinctly* prove the fraud); *Scott v. White,* 50 Or 111, 114, 91 P 487 (1907) (fraud must be proved by a *preponderance of clear and satisfactory* proof); *Waymire v. Shipley,* 52 Or 464, 470, 97 P 807 (1908) (every element of fraud must be proved by *clear and explicit* evidence); *Castleman v. Stryker,* 107 Or 48, 60, 213 P 436 (1923) (proof establishing the fraud must be *clear, satisfactory and convincing*); *Haskin v. Glaser,*

Out of this mishmash of legal standards, the trial court in this case latched onto wording from the 1935 case of *Metropolitan Cas. Ins. Co. v. Lesher,* 152 Or 161, 52 P2d 1133 (1935). In that case, the court held that where fraud was relied on as a defense to an action it was not error to instruct the jury that it was necessary to establish the fraud by clear and convincing evidence even though preponderance of the evidence remained the standard in civil cases. Justice Lusk subsequently wrote about that case in *Wilkerson Estate Hill v. U.S. Nat. Bank,* 187 Or 635, 213 P2d 209 (1949), reflecting that "[a] careful study of the [*Lesher*] opinion by Mr. Justice Rand, and of the numerous authorities from which he quoted, shows that the court in so deciding did not abandon the principle that a preponderance of the evidence is the ultimate requirement for the finding of a fact in a civil action." Both Justice Rand and Justice Lusk quoted with approval from Note, *Degrees of Proof,* 69 US L Rev 169, 178 (1935), as follows:

> " '* * * the courts are repeatedly confusing two distinct things — the weight, on the one hand, to be attached to evidence because of its nature or because of the nature of the fact sought to be established, and, on the other hand, the matter of the degree of proof.
>
> " ' * * * * * *' "

*Lesher,* 152 Or at 164-65; *Wilkerson,* 187 Or at 638.

■ Both justices concluded that while proof of fraud must be clear and convincing, issues of fact in civil cases are nevertheless determined by a preponderance of the evidence. Those most learned and highly respected justices may have been enamored with this distinction, but we doubt that any jury then or now could follow an instruction that encompasses such legal double talk. *Cook v. Michael* partially overruled *Lesher* insofar as the applicability to civil cases of ORS 41.110 (defining "satisfactory evidence") is concerned. *Cook,* 214 Or

---

138 Or 427, 436, 6 P2d 1092 (1932) (fraud should be *definitely proved*); *Metropolitan Cas. Ins. Co. v. Lesher,* 152 Or 161, 163, 175, 52 P2d 133 (1935) (evidence of fraud must be *clear and satisfactory*); *Belanger v. Howard,* 166 Or 408, 414, 122 P2d 1022 (1941) (a party who alleges fraud has the burden of proof and that *nothing short of a high degree of cogency* will suffice); *Orsen v. Siegle,* 178 Or 403, 415, 165 P2d 990 (1946) (fraud must be established by *clear and convincing* evidence); *Wilkerson Est. Hill v. U.S. Nat. Bank,* 187 Or 635, 636-37, 213 P2d 209 (1949) (proof of oral rescission of a written contract must be *clear and satisfactory,* but the findings shall be according to a *preponderance*).

at 524. We now overrule the balance of the statements in *Lesher* and *Wilkerson* which imply that a clear and convincing proof standard can co-exist with a preponderance standard on the issue of burden of persuasion.

The Oregon cases cited in this section of this opinion intertwine the terms "fraud," "deceit" and "misrepresentation" or refer to fraud without specific definition. As cogently described by Prosser & Keeton, Torts 727, § 105 (5th ed 1984), "[t]he law of misrepresentation is * * * considerably broader than the action for deceit," and the confusion over terms is compounded by the use of the word "fraud," "a term so vague that it requires definition in nearly every case." These noted authors state:

> "Liability in damages for misrepresentation, in one form or another, falls into the three familiar divisions * * * —it may be based upon intent to deceive, upon negligence, or upon a policy which requires the defendant to be strictly responsible for his statement without either. For the most part, the courts have limited deceit to those cases where there is an intent to mislead, and have left negligence and strict liability to be dealt with in some other type of action. There has been a good deal of overlapping of theories, and no little confusion, which has been increased by the indiscriminate use of the word 'fraud,' * * *." *Id.* (footnotes omitted).

Prosser & Keeton list the elements of the tort action in deceit as follows:

> "1. A false representation made by the defendant. In the ordinary case, this representation must be one of fact.

> "2. Knowledge or belief on the part of the defendant that the representation is false—or, what is regarded as equivalent, that he has not a sufficient basis of information to make it. This element often is given the technical name of 'scienter.'

> "3. An intention to induce the plaintiff to act or to refrain from action in reliance upon the misrepresentation.

> "4. Justifiable reliance upon the representation on the part of the plaintiff, in taking action or refraining from it.

> "5. Damage to the plaintiff, resulting from such reliance." *Id.* at 728 (footnotes omitted).

Plaintiff in this case alleged each of these elements,

and the trial court instructed the jury that plaintiff must prove each of these elements as it pertained to the facts alleged in the complaint. This court recognized that deceit is a distinct tort in *U.S. National Bank v. Fought,* 291 Or 201, 221, 630 P2d 337 (1981), and essentially adopted the listed elements, noting that the right to rely or justifiable reliance upon the representation by the plaintiff is a conclusion of law that need not be pleaded as ultimate fact.

■　The unique element in the tort of deceit is "the intent to deceive." Prosser & Keeton, *supra* at 741, § 107. As demonstrated by Prosser & Keeton, the presence of the intent to deceive makes deceit a much more serious offense than many other torts:

> "The intent which underlies an intentional misrepresentation is a more complex matter than the relatively simple intention in the case of assault and battery. It involves the intent that a representation shall be made, that it shall be directed to a particular person or class of persons, that it shall convey a certain meaning, that it shall be believed, and that it shall be acted upon in a certain way. * * *

> "* * * The intent which becomes important is the intent to deceive, to mislead, to convey a false impression. Obviously this intent, which has been given the name of 'scienter' by the courts, must be a matter of belief, or of absence of belief, that the representation is true * * *. The state of the speaker's mind, notwithstanding its elusiveness as a matter of psychology and its difficulty of proof, must be looked to in determining whether the action of deceit can be maintained." *Id.* at 741 (footnotes omitted).

■　In this case, plaintiff alleged that the representations were made intentionally or were made recklessly. Of course, there is no difficulty in finding an intent to deceive in a case where it is apparent that the speaker believes his statement to be false, but what if the representation is made recklessly? We agree with Prosser & Keeton that the tort of deceit may still be proven if the representation is made without any belief as to its truth, or with reckless disregard whether it be true or false, and in cases where representations are made by one who is conscious that he has no sufficient basis of information to justify them. *Id.* at 741-42; *see Dizick v. Umpqua Comm. College,* 287 Or 303, 306, 599 P2d 444 (1979); *Elizaga v. Kaiser Found. Hospitals,* 259 Or 542, 546-47, 487 P2d 870 (1971).

A party who is found "guilty" of deceit is not found merely negligent in deceiving the victim. That party must have intended to deceive the victim or acted in reckless disregard for the truth. The type of interest protected by the law of deceit is the interest in formulating business judgments without being misled by others — in short, in not being cheated. *See U.S. National Bank v. Fought, supra,* 291 Or at 220. A person who has been found "guilty" of deceiving or cheating someone certainly has been found "guilty" of conduct which carries the same stigma of guilt whether the conduct is a criminal or civil act of deceit.

As mentioned in *Mutual of Enumclaw v. McBride, supra,* ORS 10.095 is not cast in absolute terms. It requires the jury be instructed to apply the "preponderance" standard "on all proper occasions," thus leaving some discretion for this court to decide which cases are proper for such an instruction and which are not.

We conclude that the standard of proof in a civil action for common law deceit must be "clear and convincing." As our discussion above of the origins of the words points out, the evidence must be free from confusion, fully intelligible, distinct and establish to the jury that the defendant intended to deceive the plaintiff or did so with a reckless disregard for the truth. To be both clear and convincing, the truth of the facts asserted must be highly probable. *Cook v. Michael, supra,* 214 Or at 527. A trial judge should not tell a jury in a deceit case that it must be *convinced* by clear and *convincing* evidence. This misuse of parallel words would thrust us back to the dark ages. As Justice O'Connell cautioned in *Cook v. Michael,* 214 Or at 528,

> "when the proposition to be proved must be established by clear and convincing evidence, we regard it as improper for the trial court to use the word 'preponderance' in any of the instructions relating to that proposition. * * *"

However, as this court held in *Dizick v. Umpqua Comm. College, supra,* 287 Or at 311, even though "fraud" must be proved by "clear and convincing evidence," the extent of damages need only be proved by a preponderance of the evidence. *See also Byers v. Santiam Ford, Inc., supra,* 218 Or at 418 (Lent, J., specially concurring).

 In sum, in a common law deceit action the trial judge, when referring to the basic elements of the claim, should tell the jury that proof by clear and convincing evidence is required, which means that the truth of the facts is highly probable. However, when considering the issue of damages, be they general or punitive, the judge should instruct the jury that the proponent need only prove those damages by a preponderance, or greater weight of the evidence.[9]

We agree with the Court of Appeals' disposition as to defendant's assignment of error in the submission of the jury verdict form, which inferred that punitive damages could be allowed for simple negligence. Other assignments of error raised by defendant are not meritorious.

The Court of Appeals is affirmed, and the case is remanded to the trial court for a new trial only on the deceit

---

[9] The court should not instruct the jury that deceit is not presumed or make any reference that a presumption must be overcome by evidence. In a properly tried civil case, the term "presumption" should not be heard by a jury.

The legislative commentary to OEC 308 reads in part:

"Under ORE 308, once a party invoking a presumption establishes the basic facts giving rise to it, the burden of establishing the nonexistence of the presumed fact shifts to the opposing party. Plaintiff, for example, may raise the presumption that a letter duly addressed and mailed was received in the regular course of the mail. *See* Rule 311(1)(h). The judge in such a case would determine whether the evidence is sufficient to support a finding of the existence of the basic facts: that the letter was properly addressed, that it was mailed, and that it was not returned. If so, the judge would instruct the jury that if they find the basic facts to be true, then the burden is on defendant to prove by a preponderance of the evidence that the letter was *not* received. The jury should never hear the word 'presumption' during this instruction.

"* * * * *

"The Legislative Assembly decided to change Oregon practice on presumptions for several reasons. First, it is extremely difficult to phrase a jury instruction without conveying the impression that the presumption itself is evidence. That proposition has long been discredited. Second, under the current approach to presumptions, the jury must weigh the force of the legal conclusion mandated by the presumption against the testimony of witnesses and other direct evidence. That is a difficult or impossible task. Finally, the considerations of fairness, policy and probability, which underlie the creation of presumptions, are not satisfied by giving them any lesser effect.

"The approach set forth in this rule is simple and workable, and gives due consideration to the policies behind the creation of presumptions. All presumptions, whether legislatively or judicially created, must be treated in the manner prescribed by this section."

Evidence 4-8 to 4-9, § 4.13 (Oregon CLE 1986) (emphasis in original; citations omitted).

claim and punitive damages issues; the trial court is otherwise affirmed.[10]

---

[10] The jury returned its verdict in favor of plaintiff on Claim I, Fraud; Claim II, Breach of Implied Warranty of Merchantability; Claim III, Breach of Implied Warranty of Fitness for Particular Purpose; and Claim IV, Negligence, as follows:

"4. What is the percent of each of the party's negligence which caused damage to Plaintiff?

"Answer: Defendant 64%
 Plaintiff 36%

"5. If you found Defendant liable on claim I, to-wit fraud or claim IV, to-wit, negligence, and if you awarded damages to Plaintiff as a result of such fraud or negligence, you may consider whether to award punitive damages. If you have so found and you do award punitive damages, fill in the following blank:

"Punitive Damages: $60,000"