DECISION
Defendant adjusted Plaintiff's 2006 state income tax return, denying Plaintiff's claim for the working family child care credit and the credit for dependent care expenses. Plaintiff appealed. Trial was held December 12, 2007, by telephone. Plaintiff appeared and testified on his own behalf. Also testifying for Plaintiff was Alice Thayer (Alice), Plaintiff's child care provider in 2006. Defendant was represented by Maribel #3930, [1] an auditor with the Department of Revenue.
 I. STATEMENT OF FACTS
In 2006, Plaintiff worked full time in the wood products industry. Plaintiff worked the day shift, Monday through Friday, from 7:00 a.m. to 3:30 p.m. Plaintiff left the house each day at approximately 6:15 a.m. Plaintiff dropped his son Robert off at his sister Alice's home each morning on the way to work. Plaintiff and his sister lived in two separate mobile homes in the same mobile home park in Forest Grove. Plaintiff returned home each day between 4:00 and 4:30 p.m., and picked up his son at his sister's house on his way home. *Page 2 
Robert was born September 18, 1999, and was therefore six and seven years old in 2006. Robert attended school at the Cornelius Elementary School. Robert rode to school and back each day on a school bus that picked him up in the mobile home park each morning between 8:30 and 8:45 a.m., and dropped him off after school between 3:30 and 3:45 p.m. Robert was not in school during the summer and his aunt Alice cared for him all day during the summer months.
Plaintiff reported $4,800 in child care expenses in 2006, paid at a rate of $400 per month. Defendant reviewed Plaintiff's return and certain additional information and ultimately concluded that Plaintiff failed to substantiate the payment of his expenses for child care. Accordingly, Defendant denied the two credits, thereby reducing Plaintiff's $1,985 reported refund to $17. Plaintiff appealed.
 II. ANALYSIS
ORS 315.262[2] provides a refundable credit for certain low-income taxpayers to partially offset the taxpayer's child care costs incurred for the purpose of allowing the taxpayer to work or attend school. The credit is commonly referred to as the working family child care credit. The statute provides in relevant part:
 "A qualified taxpayer shall be allowed a credit against the taxes otherwise due under ORS chapter 316 equal to the applicable percentage of the qualified taxpayer's child care expenses (rounded to the nearest $50)."
ORS 315.262(2).
ORS 316.078 provides for a nonrefundable credit[3] for certain employment-related expenses, including child care, paid by a taxpayer for the care of a dependent child or children. That credit is referred to as the dependent care credit. The dependent care credit is specifically *Page 3 
tied to Internal Revenue Code (IRC) section 21, the pertinent language being that the amount of the credit is "equal to a percentage of employment-related expenses allowable pursuant to section 21 of the Internal Revenue Code." ORS 316.078(1). IRC section 21(1), in turn, provides for a partial credit for "employment-related expenses * * * paid by such individual during the taxable year."
Both credits are based on the amount of child care expenses incurred by the taxpayer each year. The credits, like all credits, are a matter of legislative grace, and a taxpayer must be prepared to prove that the claimed expenses were actually incurred in order to receive the credit. When, as in this case, the Department of Revenue (department) denies the credit and the taxpayer appeals, the taxpayer must prove its case by a preponderance of the evidence. ORS 305.427. This court has previously ruled that "[p]reponderance of the evidence means the greater weight of evidence, the more convincing evidence." Feves v. Dept. of Revenue, 4 OTR 302, 312 (1971); see also Riley Hill General Contractor v. TandyCorp., 303 Or 390, 394, 737 P2d 595 (1987) (defining "preponderance" as "the greater weight of evidence.") The question in this case is whether Plaintiff convincingly demonstrated that he actually paid his sister for the child care services she provided.
Plaintiff testified that he paid Alice $200 every two weeks for child care, from January through December 2006. Those payments were made in cash. Alice testified that she was paid $400 per month, which she testified is her "standard fee" for monthly child care, regardless of whether she was caring for the child of a relative or an unrelated third party.
Because the payments were in cash, Plaintiff does not have canceled checks. Plaintiff also does not have any bank records showing the withdrawal of the child care payments. Plaintiff testified that he does not have a bank account because he "cannot afford one." The court finds *Page 4 
that statement difficult to understand. Plaintiff had a full-time job working for a local employer and, according to information he provided to the department, earned a net pay of approximately $1,300 per month. The court sees no reason why a bank would refuse to allow an individual with a full-time job to open a checking account. Plaintiff could have deposited his paychecks into such an account and paid for his child care by check. The fact that Plaintiff chooses not to have a bank account does not mean that he could not afford one.
Plaintiff's proof of child care payments consists of the sworn testimony discussed above and certain written documents prepared after the fact, for submission to the department once it questioned Plaintiff's entitlement to the credit. Plaintiff submitted written receipts, but those receipts were prepared sometime in 2007, and they all appear to have been written in one sitting. (Ptf's Compl at 7-12.) All of those receipts are dated for the fifth and twentieth of the month. Defendant also submitted a written statement Plaintiff had provided to the department which is signed by Plaintiff's sister Alice. That statement indicates that Alice watched Robert each week Monday through Friday. That statement was also prepared in 2007. Finally, Plaintiff submitted a document titled "Record of Payments," which shows that Plaintiff paid $400 each month on the twentieth. That statement is inconsistent with the written receipts referenced above and with Plaintiff's sworn testimony.
The court finds Plaintiff's evidence inconsistent and unpersuasive. Moreover, the court does not find the witnesses credible. As indicated above, one set of Plaintiff's receipts show two monthly payments of $200 on the fifth and twentieth, whereas the "Record of Payments" shows one monthly payment of $400 on the twentieth. Moreover, Plaintiff purportedly paid his sister the same amount of money year-round, regardless of whether his son was in school most of the time Plaintiff was working, or home all day with his aunt Alice. According to the testimony, Alice *Page 5 
watched Robert for approximately two and one-half hours each day during the school year, and approximately 10 hours each day during the summer months when school was not in session. The payments were the same regardless of the amount of time involved. Such an arrangement strikes the court as unusual. There may be a valid explanation, but none was provided, even though the court raised the issue.
Then there is the familial relationship between Plaintiff and his sister Alice. Defendant suggests that the nature of that relationship automatically negates the possibility of an arm's-length transaction, as required by OAR 150-315.262(3)(b).[4] The court rejects such a presumption, but notes that the parties' relationship in this case does raise concern. Common life experience teaches that closely related individuals will often care for young ones at little or no cost. And, a sister is more likely than a stranger to fabricate a story to help her brother. The court is not saying that occurred in this case, only that it is a possibility, particularly regarding the amount of child care expenses. When coupled with the other information which, as indicated above, is inconsistent, the question of whether and how much Plaintiff paid for child care lingers. Often, the assertion of payments to a private party child care provider can be established or refuted by examining the child care provider's return to see if the payments were reported. That is not possible in this case because Alice testified she does not make enough income to meet the threshold requirements for filing an income tax return, and apparently did not file a return in 2006.
Finally, Plaintiff's reported income and expenses leave little or no room for the payment of childcare expenses. Based on information Plaintiff provided Defendant, Plaintiff's monthly net income was $1,306. Plaintiff did not refute that figure. Plaintiff reports monthly living expenses of $1,327 including $400 for child care. Those reported expenses include only $55 per month for *Page 6 
gasoline and maintenance on Plaintiff's car, $79 for lights and heat, and $200 for food and other household items. The reported amount for gasoline seems decidedly low, and Plaintiff did not include any amount for telephone or entertainment.
According to his sworn testimony, Plaintiff was unaware of the substantiation requirements in 2006 and has changed his practices in 2007 by obtaining receipts from his new provider each time he makes a child care payment. Although those changes will be helpful for future tax years, they have no impact on 2006.
 III. CONCLUSION
On the evidence before it, the court is not persuaded that Plaintiff paid for child care and, if so, how much. Accordingly, Plaintiff's request for the working family child care credit and the credit for dependent care expenses is denied. Now, therefore,
IT IS THE DECISION OF THIS COURT that Plaintiff's appeal is denied and Defendant's Notice of Refund Adjustment stands.
Dated this ___ day of January 2008.
If you want to appeal this Decision, file a Complaint in the RegularDivision of the Oregon Tax Court, by mailing to: 1163 State Street,Salem, OR 97301-2563; or by hand delivery to: Fourth Floor, 1241 StateStreet, Salem, OR.
 Your Complaint must be submitted within 60 days after the date of theDecision or this Decision becomes final and cannot be changed.
 This document was signed by Magistrate Dan Robinson on January 30,2008. The Court filed and entered this document on January 30,2008.
[1] The auditor uses her first name only and is otherwise identified by her Department of Revenue auditor number.
[2] All references to the Oregon Revised Statutes (ORS) are to 2005.
[3] Although the credit is nonrefundable it can be carried forward to offset the taxpayer's tax liability for up to five subsequent tax years.See ORS 316.078(5).
[4] All references to the Oregon Adminstrative Rules (OAR) are to 2005. *Page 1