DECISION
Plaintiffs have appealed the real market value (RMV) of their land, which is identified in the assessor's records as Account R122569[1], for tax years 2006-07, 2007-08, and 2008-09. Trial was held September 30, 2009. Flavio Tomei (Tomei) appeared for Plaintiffs. Defendant was represented by Kathy Leib, Lincoln County real property appraiser.
Jurisdiction for the 2008-09 tax year is provided in ORS 305.275 and ORS 305.280, [2] Plaintiffs having timely appealed from an order of the Lincoln County Board of Property Tax Appeals (Board). Jurisdiction for the two prior tax years lies in ORS 305.288(1), Plaintiffs having alleged an error in value in excess of 20 percent.
 I. STATEMENT OF FACTS
Plaintiffs own a three bedroom, two bath home in Lincoln City, built in 1973.[3] (Ptfs' Compl at 4.) The home is a two story structure with 1678 square feet on the main level (street-level) and an equal amount of space on the lower level, which is a partially finished daylight basement. (Id.) *Page 2 
The home sits on a 1.08 acre irregularly shaped lot with a distant view of the ocean (Siletz Bay). (Id. at 6.) The lot slopes from the front to the back, with a rather severe slope (drop-off) at the back portion of the property. (Id. at 3.) Plaintiffs describe that area as a deep ravine, and Tomei testified that there is a creek behind the house. In a letter dated February 6, 2009, and submitted with their Complaint, Plaintiffs state that their home is surrounded by forested swampland which they were told serves as a natural wildlife habitat. (Id. at 6.) Only a portion of the property is usable because of the sloping terrain. According to Plaintiffs, the usable portion, which they describe as "flat land," is only 14,740 square feet, or approximately one-third of an acre. (Id. Defendant basically agrees with Plaintiffs' assessment, estimating the usable home site to be 15,456 square feet, with the remaining 31,047 square feet constituting "excess area." (Defs Ex F1.)
Plaintiffs purchased the property (the home and land) on February 18, 2005, for $218,000. (Ptfs' Compl at 1.) Plaintiffs had the property appraised by an independent fee appraiser in 2009. The appraiser's estimate of the value of the property as of February 27, 2009, was $450,530. (Ptfs' Appraisal at 4.) That appraiser determined that the market value of Plaintiffs' land was $160,000, plus an additional $10,000 for the "As-is" value of the site improvements. (Id.)
Plaintiffs are only appealing the RMV of their land. Plaintiffs are requesting their value be reduced to $160,000. (Ptfs' Ltr at 1, Sept 14, 2009.) The RMV of the land on the assessment and tax rolls for the years at issue is $257,730 (2006-07), $322,350 (2007-08), and $326,470 (2008-09). (Ptfs' Compl at 7.)
Defendant submitted a value report that presented historical sales data for the county, and comparable sales for the periods January 1, 2006, January 1, 2007, and January 1, 2008. (Def s Exs E, F, G, and H.) *Page 3 
Defendant's historical data on total sales activity in Lincoln County shows a rising market from 2000 through 2005, when the market peaked at 3392 total sales (2005), followed by a sharply declining market in 2006, 2007, and 2008, with sales for those years of 2471, 1762, and 1088, respectively. (Def s Ex E1, E2.) Defendant's bare land sales averaged approximately $15 per square foot in 2006, followed by a sharp rise to nearly $40 per square foot in 2007, and then a sharp decline in 2008 down to approximately $19 per square foot. (Def s Exs F, G, and H.) Defendant concludes by recommending a reduction in the land RMV to $174,860 for the 2006-07 tax year, $218,570 for the 2007-08 tax year, and $279,770 for the 2008-09 tax year. (Defs Ex I.)
 II. ANALYSIS
The issue before the court is the RMV of Plaintiffs' land on January 1, 2006, 2007, and 2008. Those are the applicable assessment dates for the 2006-07, 2007-08, and 2008-09 tax years.[4] Both parties agree that the value reductions are in order. However, the parties disagree as to the magnitude of the reduction.
For purposes of property assessment and taxation, RMV in Oregon is defined in ORS 308.205(1). That statute provides in relevant part:
 "Real market value of all property, real and personal, means the amount in cash that could reasonably be expected to be paid by an informed buyer to an informed seller, each acting without compulsion in an arm's-length transaction occurring as of the assessment date for the tax year."
ORS 308.205(1). *Page 4 
While there are three recognized methods for valuing property, the sales comparison approach is most appropriate for valuing residential property, particularly in cases where only the value of the land is at issue.[5] The court looks at arm's length sales transactions of similar property to determine a correct RMV. Richardson v. Clackamas CountyAssessor, TC-MD No 020869D, WL 21263620 at *3 (Mar 26, 2003). The sale of the subject property can also provide a useful indication of the value of the property. Kem v. Dept. of Rev., 267 Or 111, 114, 514 P2d 1335 (1973) (citations omitted) (ruling that a recent sale of the property in question, while not conclusive of value, is persuasive, provided it is arm's length, and the participants are knowledgeable and willing).
Plaintiffs have the burden of proof and must establish their case by a "preponderance" of the evidence. See ORS 305.427. A "[preponderance of the evidence means the greater weight of evidence, the more convincing evidence." Feves v. Dept. of Revenue, 4 OTR 302, 312 (1971); see alsoRiley Hill General Contractor v. Tandy Corp., 303 Or 390, 394, 737 P2d 595
(1987) (" `Preponderance' derives from the Latin word `praeponderare,' which translates to `outweigh, be of greater weight.'").
The evidence in this case creates a confusing picture akin to a puzzle with pieces that do not fit well together. For example, Plaintiffs' independent fee appraiser estimated the RMV of Plaintiffs' land to be $170,000 (including site developments) in February 2009, whereas Defendant recommends that the court reduce the land *Page 5 
RMV to $174,860 as of January 1, 2006, some three years earlier. Yet, both parties agree the market was declining between 2006 and 2009.
Additionally, while Defendant's data on countywide sales shows a sharply declining market after 2005 (Def s Ex E), Plaintiffs' land RMV on the assessment and tax rolls nearly doubled between 2005 and 2006, from $139,520 to $257,730. Moreover, the comparable sales Defendant presented show a rise in the market between 2006 and 2007, followed by a decline between 2007 and 2008 (Def s Exs F, G, and H). Yet, Defendant recommends a value increase of 25 percent for January 1, 2007 (from 2006 to 2007), and 28 percent for January 1, 2008. (Defs Ex I at 1.)
The court also notes that Defendant's January 1, 2005 (2005-06 tax year) total RMV on the rolls (house and land) is $262,770. While the 2005-06 tax year is not under appeal, Defendant's RMV that year is $44,770, or 17 percent, above Plaintiffs' February 18, 2005, purchase price of $218,000. Fifty-three percent of Defendant's value (RMV) that year was attributed to the land ($139,520). (Def s Ex B at 1.) Adjusting Defendant's land RMV to correspond to the purchase price suggests the value of the land that year was approximately $110,000. Given a general declining market in 2005, it is difficult to see how Plaintiffs' land RMV as of January 1, 2006 could be approximately $175,000. Of course, Plaintiffs may have purchased the home at a bargain, which would tend to minimize the usefulness of any values extrapolated from their purchase price. There is virtually no evidence before the court pertaining to Plaintiffs' purchase.
Those are but a few of the problems the court finds with the evidence presented by the parties. Nonetheless, the parties do agree that a value reduction is warranted, and the court finds that a preponderance of the evidence demonstrates values lower than those on the assessment and *Page 6 
tax rolls for the years under appeal. It is the court's statutory responsibility to determine the value "on the basis of the evidence before the court." ORS 305.412 (2007). Accordingly, the court has analyzed the data from a variety of perspectives and arrived at what it believes to be a fair determination of the value of Plaintiffs' land on the applicable assessment dates.
 III. CONCLUSION
After carefully reviewing the evidence, the court concludes that the RMV of Plaintiffs' land, including site developments, was $175,000 as of January 1, 2006; $173,000 as of January 1, 2007; and $170,000 as of January 1, 2008. The reductions for the 2006-07 and 2007-08 tax years satisfy the 20 percent error requirement provided in ORS 305.288(1). Defendant shall recalculate the total RMV and assessed value in accordance with the court's value determinations herein. Now, therefore,
IT IS THE DECISION OF THIS COURT that Plaintiffs' appeal is granted in part as set forth above.
Dated this ______ day of March 2010.
If you want to appeal this Decision, file a Complaint in the RegularDivision of the Oregon Tax Court, by mailing to: 1163 State Street,Salem, OR 97301-2563; or by hand delivery to: Fourth Floor, 1241 StateStreet, Salem, OR.
 Your Complaint must be submitted within 60 days after the date of theDecision or this Decision becomes final and cannot be changed.
 This Decision was signed by Magistrate Dan Robinson on March 23, 2010.The court filed and entered this Decision on March 23, 2010.
[1] That account includes the home and the land.
[2] Unless noted otherwise, all references to the Oregon Revised Statutes (ORS) are to 2005.
[3] "Lincoln City is located on the central Oregon coast approximately 80 miles west of Portland and Salem, two of the largest population centers in the nearby Willamette Valley. * * * The economic base of the city is dependent upon tourism." (Ptfs' Compl at 4.)
[4] In Oregon, the "assessment year" is a calendar year, and the "tax year" is a 12-month period beginning on July 1 each year. ORS308.007(1)(b), (c). The annual "assessment date" is January 1, per ORS308.007(1)(a) and ORS 308.210, and corresponds to the tax year beginning six months later on July 1. ORS 308.007(2). Thus, for the 2008-09 tax year, the assessment date was January 1, 2008, the tax year began on July 1, 2008, and ended 12 months later on June 30, 2009.
[5] An administrative rule promulgated by the Oregon Department of Revenue instructs that the three approaches to value — sales comparison, cost, and income — be considered in determining a property's value, but recognizes that all three approaches may not be applicable in a given case. OAR 150-308.205-(A) (2005). Because the subject property is owner occupied and does not generate any income, neither party used the income approach in valuing Plaintiffs' property. Because land value is at issue, the typical methodology prescribed by the cost approach is not relevant. *Page 1