DECISION
Plaintiff appealed from Defendant's omitted property assessments for tax years 2003-04 through 2007-08, on certain personal property identified in the assessor's records as Account P2123581, and consisting primarily of the kitchen portion of Plaintiff's mobile vending units (a.k.a. catering trucks).[1] Plaintiff is represented by Juana Saldanas (Saldanas), President of Cocina Mexico Lindo, Inc. Defendant is represented by Mark Hertel, Corley Henkelman, and Vicki Ellinwood. Melissa Williams also actively participated in the case on Defendant's behalf.
The court held two proceedings by telephone. The parties then had until April 30, 2010, to submit information relevant to their respective positions. Defendant submitted a packet of information including a four-page letter dated April 28, 2010, and filed by the court May 3, 2010. Defendant's information includes a chronology of relevant events and 10 exhibits marked A through J. Defendant's exhibits include copies of the original notices of intent to add value and associated penalties, several personal property returns filed by Plaintiff, and vendor information related to the cost breakdown for mobile vending units. Saldanas submitted a two-page narrative letter dated May 10, 2010, and filed May 13, 2010. That letter challenged Defendant's allocation of value between the kitchen portion of Plaintiff's catering trucks and the trucks themselves (cab, chassis, and truck body), included a plea for a reduction in the penalties *Page 2 
and interest Defendant imposed, and expressed concern over Defendant's method of taxing catering trucks, which Plaintiff at characterizes as unfair.[2]
(Ptf's Ltr, May 10, 2010.)
 I. STATEMENT OF FACTS
The property at issue is the kitchen equipment on three catering trucks used by Plaintiff in its mobile food vending business described by Defendant as the "mobile vending/commissary kitchen portion of the business" and elsewhere generally as Plaintiffs "mobile vending units." (Def's Ltr at 1, Apr 28, 2010.) The primary dispute is the over value Defendant assigned to the kitchen "box" and related equipment that supports the function and operation of the mobile kitchen (e.g., power and gas lines, ventilation, and plumbing), as well as the associated kitchen equipment (e.g., refrigeration and cooking equipment) added to Plaintiffs trucks and used by Plaintiff in its mobile food business. (Id. at 3; Ptf's Ltr at 2, May 10, 2010.) Plaintiff also seeks a reduction or cancellation of the penalties and interest Defendant assessed as part of the omitted property assessments and unpaid taxes. (Id.)
Plaintiff was under the mistaken assumption that the property was not subject to tax because the vehicles were licensed with the state's Department of Motor Vehicles. Accordingly, Plaintiff did not include that equipment on any of the personal property tax returns it filed and Defendant was unaware of the existence of that equipment until sometime in 2008. Moreover, Plaintiff only filed personal property returns for some of the years at issue (2004, 2005, and 2008). (Def's Ltr at 1, Apr 28, 2010.)
Defendant conducted a follow-up review of Plaintiff's 2008 personal property return and became aware of the untaxed equipment. Upon a request by Defendant, Plaintiff filed an amended 2008 personal property tax return that reported the three vehicles at issue, as well as *Page 3 
Plaintiffs other taxable business personal property used in connection with Plaintiffs food vending business. (Def's Ex A.) According to Plaintiffs 2008 amended return, that equipment includes a hood, slicer, sinks, stainless steel tables, stoves, burners, freezers, and pots and pans. (Id.)
Based on the information in Plaintiffs amended 2008 return, which indicated that Plaintiff had three catering trucks purchased in 1997, 2002, and 2006, Defendant, on January 27, 2009, sent Plaintiff individual notices of its intent to add omitted property for tax years 2003-04 through 2007-08. (Def's Exs B through F; see also Def's Ltr at 2, Apr 28, 2010.) The omitted property being added was largely, if not entirely, the assessable portion of Plaintiff's mobile vending trucks.
On or about February 20, 2009, Plaintiffs President Saldanas signed and returned some of those notices to Defendant, checking the box indicating disagreement with the proposed assessments. (Def's Exs B at 1, D at 1, E at 1, and F at 1.) Subsequently, Defendant issued a "certified corrected [omitted property assessment] statement * * * on April 15, 2009." (Def's Ltr at 2, Apr 28, 2010; Def's Ex I.)
Plaintiff thereafter appealed the assessments to this court. As indicated above, Plaintiff disagrees with the value Defendant placed on the omitted property and seeks some relief from the additional charges imposed in connection with the disputed assessments. *Page 4 
 II. ANALYSIS
A. The Taxation of Tangible Personal Property
Generally, all tangible personal property in Oregon is subject to tax. ORS 307.030[3] provides:
 "(1) All real property within this state and all tangible personal property situated within this state, except as otherwise provided by law, shall be subject to assessment and taxation in equal and ratable proportion."
(Emphasis added.)
Under that statute, the default rule is that "all tangible personal property" is subject to tax. The exception to that rule is fairly new and includes limited to categories of property "as otherwise provided by law." Id. One of those exceptions is for tangible personal property held by the owner for "personal use, benefit or enjoyment. ORS 307.190(1).
Among the items of tangible personal property that are subject to tax are those "held by the owner, wholly or partially for use or sale in the ordinary course of a trade or business, or for the production of income," and "[a]ny tangible personal property required to be licensed or registered under the laws of the state." ORS 307.190(2)(a) and (b).
"Tangible personal property" includes "chattels and movables, such as boats and vessels, * * * vehicles, farming implements, movable machinery, movable tools and movable equipment." ORS 307.020(1)(c).
The property at issue consists of equipment installed on Plaintiff's catering trucks. The property clearly fits within the definition of "tangible personal property" as defined in ORS 307.020(1)(c). The property is not exempt from taxation under ORS 307.190(1) because it is not held or used "for personal use, benefit or enjoyment," but is instead held for use "in the ordinary course of [Plaintiff's] trade or business," and "for the production of income," as provided in ORS 307.190(2)(a), and is affixed to vehicles required to be (and which are) *Page 5 
licensed, as provided in ORS 307.190(2)(b). As such, the property is tangible personal property subject to ad valorem property tax.[4]
B. Omitted Property Assessments
Plaintiff did not report the property to Defendant as required by ORS 308.290(1) (requiring businesses with "taxable personal property [to] make a return of the property for ad valorem tax purposes to the assessor of the county in which the property has its situs for taxation"). Defendant eventually became aware of the existence and use of the property, and, after investigation, added the property to the assessment and tax rolls as omitted property. The total amount of Defendant's omitted property assessment, including tax and penalties, was $7,809.66. (Dee's Ex I.) The penalty portion of that assessment amounts to $1,901.84. (Id.)[5] Plaintiff apparently did not timely pay the tax and Defendant imposed additional charges for interest.
ORS 311.216, in part, provides:
 "(1) Whenever the assessor discovers or receives credible information, or if the assessor has reason to believe that any real or personal property * * *, has from any cause been omitted, in whole or in part, from assessment and taxation on the current assessment and tax rolls or on any such rolls for any year or years not exceeding five years prior to the last certified roll, the assessor shall give notice as provided in ORS 311.219."
By statute, the notice required by ORS 311.219 must include information advising the taxpayer of the opportunity to appear and show cause as to why the property should not be *Page 6 
added to the assessment and tax rolls. If the taxpayer either fails to appear, or appears but fails to persuade the assessor that the assessment should not be made, "the assessor shall proceed to correct the assessment or tax roll or rolls from which the property was omitted." ORS 311.223(1).
1. Validity of Omit Assessment
There is no dispute that the subject property was omitted from assessment and taxation for the years at issue (2003-04 through 2007-08). Accordingly, Defendant was required to add the property to the rolls. The court finds Defendant's assessment in accordance with applicable laws governing omitted property.
2. Value of the Omitted Property
Plaintiff challenges the amount of value Defendant ascribed to the property. The parties' disagreement on the value issue concerns the allocation of the value of the assessable and nonassessable components of the catering trucks.
Defendant's methodology for valuing the kitchen portion of the catering trucks is based on an allocation of cost between the truck (chassis, body and cab) and the "kitchen." Defendant asserted during one of the hearings that most of the catering trucks are made in California by two or three companies. Defendant contacted one of the leading catering truck manufacturers in California and obtained cost breakdown information from which Defendant determined that a fair allocation of the original cost of the vehicles was 25 percent for the "truck" and 75 percent the vending unit (i.e., kitchen). (Def's Ltr at 2, Apr 28, 2010.) In support of that allocation, Defendant submitted dealer invoices provided by the same dealer, Vahe Enterprises, Inc., Los Angeles California (Vahe), that sold similar mobile vending units to Plaintiff. (Def's Ex H.) Those invoices contain an actual breakdown of costs for the cab (the assessable portion of the vehicles, including labor and the costs of equipping cab boxes), and the non-assessable chassis portion of the trucks. (See id, and Def's Ltr at 3, Apr 28, 2010.) Defendant reports that: *Page 7 
 "[c]hassis cost from all dealer invoices came in at about 25% of total cost of unit (varied between 21%, 22%, 23%) [.] So for mass appraisal purposes, because mobile vending companies usually don't provide dealer invoices when they report, Washington County established a 25% reduction off the cost of the whole unit cost. This reduction represents the chassis cost being removed."
(Defs Ex H at 3 of 10.)
Finally, Defendant indicates that, during a site visit on February 23, 2010, it discovered an additional trailer with assessable assets stored inside that had not previously been reported to Defendant. (Def's Ltr at 2, Apr 28, 2010.) Defendant requested information on those assets, but never received a response and has advised the court in its April 28, 2010, letter that "[f]or settlement purposes * * * [Defendant] has elected not to process additional omitted property or include the escaped assessment of these additional omitted assets as part of this appeal." (Id.)
Defendant provided additional testimony on its approach to depreciation, but any discussion of that issue is unnecessary for purposes of the resolution of this appeal.
For its part, Plaintiff insists that the allocation should be 60 percent for the kitchen and 40 percent for the vehicles, rather than Defendant's 75 percent / 25 percent allocation discussed above. In support of its position, Plaintiff provided Defendant with letters from Vahe, the same vendor Defendant used in ascertaining the cost breakdown. Those letters, submitted in evidence by Defendant, contain "estimates" of the cost allocation for the truck body, kitchen, and chassis/power train of Plaintiff's three vehicles. (Def's Ltr at 3, Apr 28, 2010; Def's Ex G.) Those estimates are dated December 8, 2009, and were provided to Plaintiff well after Defendant issued its omitted property assessment notice in April 2009. As such, they are viewed by the court with some skepticism because they were exchanged between parties with an ongoing business relationship and served both parties' (Plaintiff and vendor) future business interests. Moreover, the information is less detailed and somewhat inconsistent with that provided to Defended by that vendor.
Defendant notes, among other things, that Plaintiffs evidence consists only of estimates *Page 8 
whereas Defendant's evidence consists of actual invoices for similar vehicles and a detailed breakdown of the component parts of the vehicles. Defendant argues that original invoice information is more reliable than estimated cost allocations supplied by Plaintiff. (Def's Ltr at 3, Apr 28, 2010.)
The burden of proof in the Tax Court is a "preponderance" of the evidence, and falls upon the party seeking affirmative relief which, in this case, is Plaintiff. ORS 305.427. The Oregon Supreme Court has stated that:
 "`Preponderance' derives from the Latin word `praeponderare,' which translates to `outweigh, be of greater weight.' 8 Oxford English Dictionary 1289 (1933). With regard to the burden of proof or persuasion in civil actions, it is generally accepted to mean the greater weight of evidence."
Riley Hill General Contractor v. Tandy Corp.,303 Or 390, 394, 737 P2d 595 (1987). This court has previously ruled that "[p]reponderance of the evidence means the greater weight of evidence, the more convincing evidence." Feves v. Depart. ofRevenue, 4 OTR 302, 312 (1971).
The court is not persuaded by the evidence Plaintiff submitted in support of its request for a reduction in the value of the property added to the rolls by Defendant pursuant to its omitted property assessment in April 2009. Accordingly, Plaintiff's challenge to the value added is denied.
C. Penalty Waiver Request
Finally, Plaintiff has requested that the court provide it with some relief from the imposition of penalties by Defendant as part of its omitted property assessment. (See generally Def's Ex I.) As indicated above, the penalty portion of that assessment amounts to $1,901.84. The court has limited authority to waive or reduce penalties imposed as part of an omitted property assessment. ORS 311.223(4) authorizes the court to consider an appeal of the penalty when it is imposed as part of an omitted property assessment based on the failure to timely file personal property returns. The standard by which the court evaluates the request for waiver is *Page 9 
found in ORS 305.422. That statute provides, in relevant part that "the court may waive the liability for all or a portion of the penalty upon a proper showing of good and sufficient cause." ORS 305.422.
The term "good and sufficient cause" is not defined in ORS 305.422. The court in prior decisions has concluded that the definition of good and sufficient cause set forth in ORS 305.288(5) is a useful guide. Sushi v. Multnomah CountyAssessor, TC-MD No 091356D, WL 224555 *1 (June 4, 2010). The definition of "good and sufficient cause" found in ORS 305.288(5)(b)(A) requires a showing of "an extraordinary circumstance that is beyond the control of the taxpayer." Moreover, the statute specifically excludes "inadvertence, oversight, lack of knowledge, [and] hardship." ORS 305.288(5)(b)(B). Plaintiff in this case did not file personal property tax returns that included the property subject to Defendant's omitted property assessment because Plaintiff was unaware that the property was subject to tax. Those facts clearly do not fall within the definition of good and sufficient cause. Accordingly, the court cannot waive or reduce the penalties.
 III. CONCLUSION
The court concludes that Plaintiff is not entitled to any relief. The property added to the assessment and tax rolls by Defendant as omitted property was required to be reported by Plaintiff on its personal property tax returns for the years at issue and Plaintiff failed to report the property. Defendant was unaware of the property and, upon discovery thereof, added the property to the rolls under the omitted property statutory provisions. Plaintiff challenged the value Defendant determined for the property under appeal but failed to establish a lower value by a preponderance of the evidence. Accordingly, the value determined by Defendant stands. Additionally, because Plaintiff failed to file personal property returns for some of the years at issue, the law required the imposition of penalties, and Plaintiff has not established entitlement to a waiver or reduction thereof. Defendant added penalties for the appropriate years. *Page 10 
Now, therefore,
IT IS THE DECISION OF THIS COURT that Plaintiffs appeal of Defendant's omitted property assessment for tax year 2003-04 through 2007-08, is denied. Defendant's assessments stand.
Dated this ___ day of February 2011.
If you want to appeal this Decision, file a Complaint in theRegular Division of the Oregon Tax Court, by mailing to:1163 State Street, Salem, OR 97301-2563; or by hand delivery to:Fourth Floor, 1241 State Street, Salem, OR.
 Your Complaint must be submitted within 60 days after the dateof the Decision or this Decision becomes final and cannot bechanged.
 This document was signed by Magistrate Dan Robinsonon February 9, 2011. The Court filed and entered this documenton February 9, 2011.
[1] Saldanas refers to the vehicles used in the business as "catering trucks" in her letter to the court dated May 10, 2010, filed by the court May 13, 2010.
[2] In speaking generally about the taxation of catering trucks, Saldanas states in her letter that "[w]e understand that this is something new and that there may be some gray areas as to how it should be taxed * * * [because] a lot of the business owners [] lack the language [and] are not treated fairly and pretty much they are told `[i]t is what it is and you will have to pay otherwise we will put a lien on your trucks and take them away.'" (Ptf's Ltr at 2, May 10, 2010.)
[3] Unless noted otherwise, all references to the Oregon Revised Statutes (ORS) are to 2007.
[4] Defendant indicates in its April 28, 2010, letter, that it was advised by the Oregon Department of Revenue Appraisal Resource Team that "under ORS 801.285, the mobile units in question [meet] the criteria [for] taxable fixed load vehicles." (Def's Ltr at 2, Apr 28, 2010.) However, for purposes of "uniformity and fairness[,]" Defendant made the decision to continue to tax only a portion of the vehicles. (Id.) Defendant further indicates that the entire vehicles "will be taxable as to a fixed load vehicle" beginning with tax year 2010-11. (Id.)
[5] According to the certified assessment notice, which Defendant indicates is a "corrected" notice, there is no penalty for the 2004-05 tax year, and the penalty for the 2005-06 tax year is only five percent of the additional tax. It appears to the court that those penalties (or lack thereof) were determined in accordance with the provisions of ORS 308.296 in effect for 2004 and 2005 (i.e., the 2003 edition of the ORS). According to Defendant, Plaintiff timely filed the tax year 2004-05 return, and Plaintiff was therefore not subject to penalty. ORS 308.296(1) (2003) and ORS 308.290(3) (2003). The tax for 2005-06 return was filed less than one month late and therefore only subject to a five percent penalty. ORS 308.296(2) (2003). *Page 1