IN THE OREGON TAX COURT
MAGISTRATE DIVISION
Property Tax

DUANE K. WALKER                      )
and LORI M. WALKER,                  )
                                     )
            Plaintiffs,              )    TC-MD 150366C
                                     )
      v.                             )
                                     )
JOSEPHINE COUNTY ASSESSOR,           )
                                     )
            Defendant.               )    **FINAL DECISION**

This Final Decision incorporates without change the court's Decision, entered

September 22, 2015. The court did not receive a statement of costs and disbursements within 14

days after its Decision was entered. *See* TCR-MD 16 C(1).

Plaintiffs appeal Defendant's removal of special assessment for designated forestland on

4.1 acres of Plaintiffs' property, notice of which was sent by Defendant on May 15, 2015, for the

2015-16 tax year. A trial was held by telephone on September 2, 2015. Duane Walker and Lori

Walker (Walker) appeared on behalf of Plaintiffs; Walker testified for Plaintiffs. Connie Roach

(Roach) appeared and testified on behalf of Defendant. Plaintiffs' Exhibits 1 through 11 were

received without objection. Defendant's Exhibit A was received without objection. The parties

waived opening statements. Walker and Roach were each placed under oath by the court before

testifying.

/ / /

/ / /

/ / /

/ / /

/ / /

## I. STATEMENT OF FACTS

Walker testified that Plaintiffs purchased the subject property, identified as Account R337693, consisting of 5.1 acres of land with a home, on June 6, 2014.[1] Walker further testified that at the time of purchase, the real estate agent they worked with when buying the property advised them not to cut any trees or they would lose the special assessment. Walker further testified that neither the real estate agent nor anyone from the assessor's office gave Plaintiffs any specific information about Oregon's forestland special assessment program at the time of purchase.

According to Walker, a little less than a year after they purchased the property, Plaintiffs cut down some trees and did some thinning and removal of shrubs and dead vegetation based on the recommendation of an employee from the State Forester's office, who came to the property on April 9, 2015. Walker testified that that same employee returned to their property on May 13, 2015, and advised Plaintiffs that they had complied with his earlier recommendations and that "everything was approved." Walker explained that the trees Plaintiffs cut down were trees identified for removal by the employee from the State Forester's office, and that they were cut down to reduce the risk of fire destroying the home. Walker also explained on cross-examination that Plaintiffs planted six sugar gum trees and some fruit trees. On redirect, Walker testified that Plaintiffs' intent when they bought the land was to keep using the property the way the previous owner had; that they loved of the land the way it was and they had no intention of removing trees that are on the property and healthy. Roach noted during her case in chief that the trees listed on a form Plaintiffs submitted as Exhibit 11 are not the type of trees identified as

---

[1] Walker actually testified that Plaintiffs purchased five acres, but Roach later testified for Defendant that the property was actually 5.1 acres, with 4.1 acres previously in forestland special assessment and the remaining one acre constituting the homesite. Walker did not dispute that testimony and the court accepts it as fact (Plaintiffs bought and own 5.1 acres). As a practical matter, the difference is not important for purposes of the court rendering its decision.

"marketable." In response to Roach's testimony about the types of trees deemed marketable, Walker testified on redirect that Plaintiffs have and will continue to cut old dead trees and they will replant with trees that are considered to be of a "marketable species," which Walker referred to as "the right kind of trees."

Plaintiffs received a questionnaire from Defendant on November 21, 2014. (Ptfs' Ex 8; Def's Ex A at 1.) Roach testified that Defendant sends that same questionnaire to all new owners of forestland to see if they intend to continue to comply with the program requirements. The questionnaire reads, in relevant part, as follows:

> "Our records indicate that you recently acquired property that includes specially assessed forestland under ORS 321.257 to 321 390. Please return this questionnaire to the Josephine County Assessor's Office * * *. Your cooperation is needed to determine your eligibility for this special assessment.
>
> "* * * * *
>
> "2) Do you intended to hold the forestland for the predominate purpose of growing and harvesting marketable timber? (consider the forestland, not the residential portion of your property)[.]
>
> Yes                    No"

(*Id*.)

Walker, who signed the questionnaire on November 24, 2014, circled "no" to question 2 of that form, set forth immediately above. Roach asked Walker on cross-examination if she read the first paragraph of the questionnaire, set forth immediately above, and references to the forestland special assessment statutes informing taxpayers that their "cooperation is needed to determine * * * eligibility for * * * special assessment."

Walker testified that Plaintiffs circled "No" to question 2 of the questionnaire because they were not planning to sell or cut any trees; their intent was to only cut down old dead trees as the previous owners had done, and that they would not be selling the trees because they would

have no value. Walker testified that she did not have "proper information" about the forestland special assessment program until May 2015, after she had filled out the questionnaire Defendant had sent Plaintiffs. Walker further testified that she would have answered the questions on the questionnaire differently if she had known the requirements of the forestland special assessment program. When pressed on the matter, Walker testified that Plaintiffs would have identified their intent as harvesting and replanting trees. Walker added that her understanding of the forestland special assessment program is that its purpose is to keep their house safe from fire, and to keep it "a forest." Walker testified that Plaintiffs would harvest (cut) dead trees and plant new marketable trees with the proper spacing as explained by the State Forester's employee. On cross-examination, Walker testified that Plaintiffs have not done anything different on their land since they learned of the forestland program requirements.

Defendant's representative Roach drew the court's attention to Plaintiffs' Exhibit 11. That exhibit is a document is titled "Wildland Urban Interface Grant Payment REBATE," and among the information provided on that form is a list of the types of trees and plants on the property. According to that document, the dominant plants on Plaintiffs' land are scrubland, oak woodland and madrone dominant. Roach testified that those are not the types of trees "identified" as marketable. Plaintiffs did not challenge Roach's testimony on that point nor did they present any evidence indicating that their land had trees considered in the industry as qualifying marketable species. Walker's testimony was that Plaintiffs planted trees they liked, and that the handful of trees they planted were sugar gum trees and fruit trees.

/ / /

/ / /

/ / /

## II. ANALYSIS

A. *The Issue Presented*

Plaintiffs have requested that the court reinstate forestland special assessment on the 4.1 acres of the subject property, removed from the program by Defendant for the 2015-16 tax year.[2] The issue, therefore, is whether Plaintiffs' property qualified for forestland special assessment under ORS 321.257 to ORS 321.390. For the reasons set forth below, the court concludes that Plaintiffs are not entitled to reinstatement of forestland special assessment for the 2015-16 tax year.

B.      *Burden of Proof*

The burden of proof in the tax court is a "preponderance" of the evidence, and falls upon the party seeking affirmative relief which, in this case, is Plaintiffs. ORS 305.427. The Oregon Supreme Court has stated that:

> " 'Preponderance' derives from the Latin word 'praeponderare,' which translates to 'outweigh, be of greater weight.' 8 Oxford English Dictionary 1289 (1933). With regard to the burden of proof or persuasion in civil actions, it is generally accepted to mean the greater weight of evidence."

*Riley Hill General Contractor v. Tandy Corp.*, 303 Or 390, 394, 737 P2d 595 (1987). This court has previously ruled that "[p]reponderance of the evidence means the greater weight of evidence, the more convincing evidence." *Feves v. Dept. of Revenue*, 4 OTR 302, 312 (1971) (citation omitted).

---

[2] Plaintiffs' Complaint, filed July 1, 2015, did not specify the relief they were requesting. However, during the telephone case management hearing the court held August 5, 2015, Plaintiffs indicated that the request was for the court to reinstate forestland designation. The court issued an order August 7, 2015, amending the Complaint to specify that Plaintiffs were requesting reinstatement of forestland designation on their property. (Order at 1, Aug 7, 2015.)

As the party seeking affirmative relief, Plaintiffs must persuade the court by a preponderance of the evidence that the property at issue qualified for forestland special assessment for the 2015-16 tax year and thus should be reinstated as designated forestland.

C.      *Forestland Statutes*

Defendant directed the court to several statutes that bear on Oregon's forestland special assessment program. ORS 321.262(2)(a) provides that the purposes of the western Oregon forestland special assessment program are "[t]o establish a special assessment program as a means of * * * [r]ecognizing the long-term nature of the forest *crop* and fostering the public policy of Oregon to encourage the *growing and harvesting of timber*."[3] (Emphasis added.) That statute further provides that another purpose of the program is "[p]rotecting the public welfare by assuring that the citizens of the state and future generations shall have the benefits to be derived from the *continuous production of forest products from private forestlands*." ORS 321.262(2)(b) (Emphasis added).

The legislative findings in ORS 321.259 include the following:

"The Legislative Assembly finds that:

"* * * * *

"(2) The interests of the state, its citizens and future citizens are best served by sustained yield practices and taxing policies that encourage *production of forest resources* for commerce, recreation and watersheds, stabilize employment levels, prevent large population shifts and encourage millage of timber products within Oregon.

"(3) *Timber on private lands managed* on a sustained yield basis *should be treated as a crop* and not taxed as real property."

(Emphasis added.)

/ / /

_____
[3] The court's references to the Oregon Revised Statutes (ORS) are to 2013.

The court has drawn emphasis to certain language in the statutes set forth above pertaining to western Oregon forestland special assessment because Walker's testimony revealed that it was and is Plaintiffs' desire to leave their wooded lands predominantly as is, only cutting trees when and where necessary, and not selling the timber, whereas the legislative findings and stated purpose of the program is forestland production through the ongoing growth and harvest of timber, treating such as a crop.

In addition to the legislative findings and purposes of the forestland program in Oregon set forth above, there is a statute that defines "forestland." That statute reads:

> "(2) 'Forestland' means land in western Oregon that is being held or used for the predominant purpose of growing and harvesting trees of a marketable species and has been designated as forestland or land in western Oregon, the highest and best use of which is the growing and harvesting of such trees."

ORS 321.257.

Subsection (5) of that statute (ORS 321.257) provides: " '[s]ustained yield management' means the growing and harvesting of timber crops on a continuous basis on land that is primarily dedicated to timber production."

There is no evidence, nor even a claim by Plaintiffs, that their land meets the second of the two categories of forestland set out in ORS 321.257(2) ("land in western Oregon, the *highest and best use* of which is the growing and harvesting of [trees of a marketable species])." Accordingly, to qualify for special assessment, Plaintiffs land must qualify as "designated" forestland. Land is designated as forestland if it is being held or used "for the predominant purpose of growing and harvesting trees of a marketable species." (*Id.*) Land previously designated as forestland will be disqualified in the event the assessor discovers that the property no longer meets the statutory definition. ORS 321.359(1)(b)(C).

/ / /

D.    *Defendant's Disqualification and Plaintiffs' Request for Reinstatement*

ORS 321.359(1)(a) provides that land that has been designated as forestland "shall [continue to] be valued as such until the assessor removes the forestland designation under paragraph (b) of this subsection."  Paragraph (b) provides that "[t]he county assessor shall remove the forestland designation upon * * * (C) [d]iscovery by the assessor that the land is no longer forestland."

Defendant (the assessor) in this case removed 4.1 acres of Plaintiffs' property from forestland special assessment based on the information Plaintiffs provided on the questionnaire Defendant sent them, in which they indicated that they did not intend to hold the land for the predominant purpose of growing and harvesting marketable timber.  (Def's Ex A at 1.)  Holding or using land "for the predominant purpose of growing and harvesting timber of a marketable species" is the fundamental requirement of ORS 321.257(2), the forestland special assessment statute.

Plaintiffs purchased the subject property, which includes the 4.1 acres of land removed from forestland designation, in June 2014.  When they bought the land Plaintiffs did not intend to grow and harvest trees.  Walker testified that their intent was to enjoy the woods the way they were and to only cut down older dead trees that posed a fire hazard.  Moreover, Walker testified that Plaintiffs did not intend to sell the trees they cut down because they had no value.  Walker further testified that it was Plaintiffs understanding at the time of purchase that they could not cut down the trees on the land, and they had no intent of doing so.  Walker did testify that if she had a better understanding of the forestland program, she would have responded differently to the questionnaire, answering "yes" instead of "no" to question number 2 of the questionnaire, thereby declaring an intent to harvest and replant trees.  However, hindsight is, as they say,

20/20. Walker also testified that Plaintiffs had no intent to harvest (cut) healthy trees and that they loved the land of the way it was. Finally, Walker testified on cross-examination that Plaintiffs have not done anything different on their land since they learned of the forestland program requirements.

ORS 308.007 and ORS 308.210, read together, establish that the annual assessment date in Oregon is January 1 and the determination of whether a property qualifies for forestland special assessment is based on the use of the property and the intent of the owners on that date, which in this case is January 1, 2015. Thus, under ORS 321.366(1), when land is removed from forestland designation "because the land is no longer forestland," such removal is effective "as of the January 1 assessment date for the tax year in which the county assessor discovers that the land is no longer forestland."

Plaintiffs have indicated that they are not growing and harvesting trees of a marketable species and that they have at most a limited intent to do so in the future, by removing dead trees and restocking with trees that are deemed marketable. Under these circumstances, the land at issue that Defendant removed from forestland special assessment, does not qualify for such assessment, and Defendant's removal of the 4.1 acres from the forestland program was in accordance with applicable law.

### III. CONCLUSION

Based on the facts of this case and applying the definition of forestland found in ORS 321.257(2), it is the conclusion of the court that the 4.1 acres of Plaintiffs' property, identified in the assessor's records as Account R337692, does not qualify for special assessment as designated forestland for the 2015-16 tax year. Now, therefore,

/ / /

FINAL DECISION TC-MD 150366C                                                                                          9

IT IS THE DECISION OF THIS COURT that the 4.1 acres of Plaintiffs' property, identified in the assessor's records as Account R337692, does not qualify for special assessment as designated forestland for the 2015-16 tax year and that Plaintiffs' appeal is denied.

Dated this ____ day of October 2015.


_____
DAN ROBINSON
MAGISTRATE


*If you want to appeal this Final Decision, file a complaint in the Regular Division of the Oregon Tax Court, by mailing to: 1163 State Street, Salem, OR 97301-2563; or by hand delivery to: Fourth Floor, 1241 State Street, Salem, OR.*

*Your complaint must be submitted within 60 days after the date of the Final Decision or this Final Decision cannot be changed.  TCR-MD 19 B.*

*This document was filed and entered on October 9, 2015.*