IN THE OREGON TAX COURT
MAGISTRATE DIVISION
Property Tax

ROSALIE RIDGE LLC,                )
                                          )
          Plaintiff,              )    TC-MD 111234C
                                            )
          v.                      )
                                          )
MULTNOMAH COUNTY ASSESSOR,    )
                                          )
          Defendant.       )    **DECISION**

Plaintiff appeals the disqualification of 9.75 acres of land, identified in Defendant's

records as Account R324603 (subject property), from the Western Oregon designated forestland

special assessment program (special assessment), for the 2011-12 tax year.[1] Plaintiff also

appeals the additional taxes Defendant imposed for tax years 2005-06 through 2010-11.

Trial was held in the Tax Court in Salem, Oregon, on September 19, 2012. John Junkin

(Junkin), Attorney at Law, represented Plaintiff; Lillian R. Logan (Lillian Logan), sole member

of Plaintiff, and Daniel James Logan (Daniel Logan), tree farmer and forester, testified for

Plaintiff. Lindsay R. Kandra (Kandra), Multnomah County Assistant Attorney, appeared on

Defendant's behalf. The court received Plaintiff's Exhibits 1 through 11 and Defendant's

Exhibits A through G without objection.

This court previously issued an Order denying summary judgment motions by Plaintiff

and Defendant, ruling that the notice requirements for forestland disqualification do not require

actual notice as Plaintiff contended and that, contrary to Defendant's assertion, Plaintiff's appeal

was timely because, under ORS 305.280(1), a taxpayer has 90 days from actual knowledge in

_____

[1] Plaintiff appealed a similar disqualification for an adjacent property comprising 6.09 acres of land known as Account R324604. Although the court treated the two properties as one for purposes of its examination of the summary judgment motions, the parties have stipulated to the return of Account R324604 to special assessment. Therefore, the appeal for that property has been closed and will not be addressed here.

which to appeal.  (July 25, 2012 Order TC-MD 111233C, at 4, 6, 9.[2])  That Order is incorporated

herein by this reference.

## I.  STATEMENT OF FACTS

A.    *Subject property facts*

The subject property is a 9.75 acre parcel located on the corner of NW Cornell and NW

Miller Road in Portland, Oregon.  (Stip Facts at 1.)  Lillian Logan testified she acquired the

subject property in 1977.  She subsequently applied for and received designated forestland

special assessment for the subject property for the 1984-85 tax year.  (*Id*.)  The property

remained in forestland special assessment until Defendant sent Plaintiff a notice disqualifying the

property from special assessment for the 2011-12 tax year.  (*See id*.)

In 2005, Lillian Logan conveyed ownership of the property to Plaintiff, Rosalie Ridge,

LLC.  (Def's Ex A.)  According to her trial testimony, Lillian Logan was, and is, the sole

member of that entity.  (*See also* id.)  The Memorandum of Sole-Member of Rosalie Ridge,

LLC, signed by Lillian Logan, states "[t]he primary purpose and business of [Plaintiff] is to own,

lease and otherwise deal in real estate."  (*Id*.)  Lillian Logan testified that Plaintiff was formed to

be a "holding company" for tax and liability purposes.  Moreover, as Plaintiff's sole member,

Lillian Logan testified that there had been no development of the subject property, and that there

were no plans to pursue development of the property.

The subject property is currently "zoned R10 (residential) with environmental

conservation and protection overlay zones," and has been since annexation into the City of

Portland in 2006.  (Compl at 2.)  Chapter 33.430 of the Portland City Code (Code) addresses

environmental conservation and protection overlays, which typically strictly regulate the removal

---

[2] This case was previously consolidated with *Rosalie Ridge LLC v. Multnomah County Assessor*, 111233C, for purposes of the parties' cross-motions for summary judgment; plaintiff Rosalie Ridge having appealed actions by Defendant affecting to adjoining properties.  After ruling on the summary judgment motions, the court issued an order September 17, 2012, severing the two cases.

of vegetation, including trees, within the city. (Ptf's Ex 7.) The regulations expressly apply to development, land divisions and property line adjustments, and the cutting and removing of "native vegetation listed in the *Portland Plant List*[.]" (*Id.* at 5.) Moreover, in an environmental protection zone, "[d]evelopment will be approved * * * only in rare and unusual circumstances." (*Id.* at 2.) Notwithstanding the general treatment, the Code provides that "in the case of existing Agricultural uses, there is an exception (33.430.080.C.2)[3] that covers, among other things, agricultural uses and activities associated with such uses. If evidence of historic and ongoing agricultural activity can be provided, timber harvesting may continue." (Ptf's Ex 8 at 1.)

Daniel Logan testified that he married Lillian Logan in 1990. He further testified that he is an experienced forester and tree farmer who owns and operates a 175 acre tract of forestland in nearby Washington County where he and Lillian Logan reside. The undisputed testimony is that Daniel Logan has been involved in forestry since childhood; he has a degree in Forest Management and has served on various committees and boards related to forest matters.

Daniel Logan testified that between 1990 and late 2000 or early 2001 he was managing the property, which he acknowledged involved little activity because he was "mainly busy with his own 175 acre tree farm" in nearby Washington County. Daniel Logan further testified that it was not until sometime in late 2000 or early 2001 that a friend and forest consultant who lives near the subject property suggested that he do something with the property, perhaps some type of forest activity. Daniel Logan testified that he obtained a permit to clear-cut the subject property early 2001. (*See* Ptf's Ex 1.) Daniel Logan testified that he then cut approximately 191,000 board feet of hardwood in 2001, which Plaintiff sold for slightly more than $72,000; Daniel

/ / /

---

[3] 33.430.080.C.2 refers to the Portland City Code section applicable to the exception to the typical Environmental Plan Check standards or Type II/III Environmental Review required to remove trees within the environmental overlay zones.

Logan obtained additional timber from that harvest for firewood. (*See* Ptf's Ex 4 at 2; Ptf's Ex 5 at 1.)

Daniel Logan testified that, in the Fall of 2001, he replanted over 3,000 Douglas Fir saplings with a density of 400 trees per acre. (*See* Ptf's Ex 10.) Daniel Logan noted he performed chemical spray maintenance in 2001 to inhibit the regrowth of the harvested stumps; however, Daniel Logan also testified he intended to permit the new trees to grow without significant management for the next 10 years before beginning thinning activities. (*See* Ptf's Ex 11.) Daniel Logan did not testify to any maintenance on the subject property following the 2001 activities. Furthermore, Daniel Logan did not indicate that Plaintiff had obtained, or intended to obtain, a forest management plan. According to Daniel Logan, the 2006 annexation into the City of Portland did not, in his opinion, preclude Plaintiff from continuing with forestry activities, including a future harvest of the current timber stands. (*See* Ptf's Ex 6.)

Following annexation into the City, in 2006 Plaintiff joined with Polygon Northwest Company (Polygon) in obtaining preliminary plat approval to subdivide the subject property. (Def's Exs C at 8; D.)[4] Daniel Logan testified that Polygon intended to enter into a land sale contract with Plaintiff, contingent upon the plat approval. According to Daniel Logan, Plaintiff never intended to develop the subject property but the developer offered "a lot of money." Furthermore, Daniel Logan noted that, with the exception of a small portion of the southwestern corner, the subject property was "unsuitable for residential development" due to its steep slope.

In 2007, Polygon, again with Plaintiff's assistance, sought a lot line adjustment to the subject property to aid in the development process. (Def's Exs E-F.) Daniel Logan testified that sometime after the 2007 lot line adjustment, Polygon withdrew from the proposed land sale.

/ / /

---

[4] The subdivision application noted the parcel contained a total 16.02 acres, of which the subject property comprised 9.75 acres. (*See* Def's Ex D at 1.)

At trial, Kandra asserted the primary purpose of Plaintiff – an entity distinct from both Daniel Logan, the property's forester, and Lillian Logan, the sole member – should be ascertained by objective actions. Citing the Memorandum of Sole-Member, Kandra noted the declared primary purpose at the time of Plaintiff's incorporation was "to own, lease and otherwise deal in real estate." (Def's Exhibit A.) Kandra also noted the lack of additional forest activities since development efforts began in 2006 and 2007. Kandra stated:

> "[p]roperty qualifies as forestland under the tax law, and this is what we're talking about today – we're not talking about a non-conforming use, we're not talking about exceptions to environmental overlays – we're talking about the tax law; and the tax law provides that forestland is forestland if it is held for the predominant purpose of growing and harvesting trees. * * * [Defendant's] position in this proceeding is that Plaintiff has not been holding this property for the predominant purpose of tree harvest."

According to Kandra, Plaintiff's objective actions demonstrate that its primary purpose, at the time of the tax year at issue, was "residential development."

B.     *Procedural history*

The subject property has been in special assessment continuously from 1984-85 until tax year 2011-12. (Stip Facts at 1.) On June 22, 2011, Defendant transmitted by certified mail to Plaintiff at its last address of record a notice of disqualification (notice) of the subject property from special assessment. (*Id.*) The text of the notice stated the subject property was disqualified because

> "[t]he land is no longer in a qualifying use and has been disqualified from * * * Designated Forestland, ORS 321.359(1)(b)(C), western Oregon[.] Note: It has come to our attention that either The City or County Planning Department has applied one of the following Environmental Overlays to your property: (c), (p). These overlays have restrictions such that the property no longer meets the definition of forestland."

(Def's Mot Summ J, Ex A at 1.)

/ / /

Plaintiff did not receive the notice and remained unaware of the disqualification until on or around November 4, 2011, when it received its annual Property Tax Statement for the subject property. (Ptf's Compl at 3-4.) Defendant did not provide any other notice to Plaintiff. (Stip Facts at 1.)

Plaintiff appealed the disqualification to this court on December 5, 2011. The parties submitted cross-motions for summary judgment. Plaintiff sought summary judgment claiming Defendant failed to satisfy the statutory notice requirements under ORS 308A.718; Defendant asserted Plaintiff failed to timely appeal. (Ptf's Mot Summ J at 2; Def's Mot Summ J at 1.) The court held oral argument on the motions on May 22, 2012. On July 25, 2012, the court issued an Order denying both motions. (Order at 8-9.) The court found that ORS 308A.718 did not require actual notice to Plaintiff of the disqualification. (*Id.* at 6.) The court further found that Plaintiff timely appealed the disqualification within 90 days of actual knowledge of the notice thereof. (*Id.* at 4.) The Order directed the parties to proceed to trial on the merits of Plaintiff's claim pertinent to the special assessment. (*Id.* at 9.)

## II. ANALYSIS

The issue before the court is whether Defendant's disqualification of the subject property from special assessment for tax year 2011-12 was in error. Defendant contends it correctly disqualified the subject property because Plaintiff failed to demonstrate a predominant purpose of the growth and harvest of timber. Plaintiff asserts it is not barred from harvesting timber by the City's environmental overlay restrictions due to its prior harvest activities. Plaintiff further contends its predominant purpose is, in fact, the growth and harvest of timber.

As the party seeking relief, Plaintiff must demonstrate by a preponderance of the evidence that the subject property was eligible for forestland special assessment during tax year

2011-12. ORS 305.427.[5]  The Oregon Supreme Court has stated that:

> " 'Preponderance' derives from the Latin word 'praeponderare,' which translates to 'outweigh, be of greater weight.' 8 Oxford English Dictionary 1289 (1933). With regard to the burden of proof or persuasion in civil actions, it is generally accepted to mean the greater weight of evidence."

*Riley Hill General Contractor, Inc. v. Tandy Corp.*, 303 Or 390, 394, 737 P2d 595 (1987).  This court has previously ruled that "[p]reponderance of the evidence means the greater weight of evidence, the more convincing evidence." *Feves v. Dept. of Revenue*, 4 OTR 302, 312 (1971) (citation omitted).

Pursuant to ORS 321.716(1)(b), which requires the county assessor to "disqualify land as small tract forestland upon * * * [d]iscovery by the assessor that the land is no longer forestland," Defendant removed the subject property from special assessment by notice mailed on June 22, 2011.  (Def's Mot Summ J, Ex A at 1.)  Defendant stated the subject property was being disqualified because environmental overlays had been applied imposing "restrictions such that the property no longer meets the definition of forestland."  (*Id.*)  However, at trial, Kandra noted that "[Defendant's] position in this proceeding is that the Plaintiff has not been holding this property for the predominant purpose of tree harvest."

A.     *Special assessment "forestland"*

ORS 321.257(2) sets out the definition of "forestland" for purposes of special assessment:

> " 'Forestland' means land in western Oregon that is being held or used for the predominant purpose of growing and harvesting trees of a marketable species and has been designated as forestland or land in western Oregon, the highest and best use of which is the growing and harvesting of such trees. * * *."

Under the statute, the subject property may qualify as "forestland" if it is established that the "predominant purpose" of the property's use is the growth and harvest of "trees of a marketable

---

[5] Unless noted otherwise, all references to the Oregon Revised Statutes (ORS) are to 2009.

species." ORS 321.257(2); *Kliewer v. Dept. of Rev.* (*Kliewer*), 15 OTR 139, 142 (2000). There are two types of forestland permitted under the special assessment statute: (1) property that has been designated as forestland, or (2) property that is deemed to have a highest and best use of the growth and harvest of marketable timber. *Kliewer*, 15 OTR at 142. As the court stated in *Kliewer*, the highest and best use designation is inappropriate where a property previously obtained a forestland special assessment designation. *Id*. at 146. The subject property enjoyed forestland special assessment designation from 1984-85 until its removal from special assessment in 2011-12; as such, the highest and best use designation is inapplicable to the subject property. (*See* Stip Facts at 1.) Therefore, the inquiry here will focus on the forestland designation. To prevail, Plaintiff must demonstrate a predominant purpose to grow and harvest trees of a marketable species on the subject property.

B.    *Evidence of "predominant purpose"*

To evaluate a property's status under the "predominant purpose" prong of ORS 321.257(2), the court may review a number of factors, the satisfaction of which may weigh in favor of designating property as "forestland" under the statute. These factors include zoning, the taxpayer's stated purpose, and the implementation of a forest management plan. *Goucher v. Multnomah County Assessor* (*Goucher*), TC-MD No 111012C at 6 (Jun 15, 2012).

The subject property was zoned "R10 (residential) with environmental conservation and protection overlay zones" at the time of its annexation by the City of Portland in 2006. (Ptf's Compl at 2.) There is no evidence before the court that the zoning has changed since that time. According to the Code, removal of vegetation from the subject property is regulated unless Plaintiff can demonstrate it satisfies the Code's exception for "historic and ongoing agriculture activity." (Ptf's Ex 8 at 1.) At trial, Daniel Logan asserted that the conservation and protection overlays would not prove an obstacle to the future harvest of timber on the subject property. (*See* Ptf's Ex 6.) Defendant did not dispute this statement. In fact, Kandra stated at trial "[today]

DECISION  TC-MD 111234C                                                                                    8

we're not talking about a non-conforming use, we're not talking about exceptions to environmental overlays." The court reads Kandra's statement, as Junkin did in his closing statement, as evidence that "both sides agree * * * that the environmental protection and environmental conservation overlay zones that are applied to [the] subject property are not a bar" to the designation of the subject property as forestland.

Here, Daniel Logan testified as to substantial harvest and reforestation activities on the subject property in 2001. According to Daniel Logan, the property was scheduled to rest for 10 years following the 2001 date of reforestation, after which he intended to conduct thinning activities by removing some of the trees. Following the reforestation in 2001, a number of events occurred: (a) the subject property was annexed into the City and rezoned; (b) ownership of the property was transferred to Plaintiff, a corporate body whose stated purpose is "to own, lease and otherwise deal in real estate"; and (c) Plaintiff joined Polygon in multiple efforts to develop the property – first in 2006 with the subdivision preliminary plat approval and later in 2007 with the lot-line adjustment. (Compl at 2; Def's Exs A, D-F.) Plaintiff's representative Junkin asserted at trial that the holding of real property for the growth and harvest of timber is a plausible construction of Plaintiff's stated purpose. Moreover, Lillian Logan testified Plaintiff was formed as a "holding company" for liability and tax purposes. Taking into consideration the lack of additional markers to support Plaintiff's construction, the court declines to accept Junkin's interpretation of Plaintiff's stated corporate purpose, and further finds that the evidence does not show a predominate purpose of growing and harvesting trees.

At trial, Junkin asserted that Daniel Logan's lifelong background in the field of forestry, including his formal college education and involvement with various related organizations, as well as his ownership and management of a 175 acre tree farm in Washington County, strengthen Plaintiff's case for forestland special assessment. The court disagrees. Instead, the court finds that those facts, when considered in light of the other directly relevant facts, lend themselves to

various interpretations. On the whole, the facts suggest that, at most, there may have been an intent to manage the property as qualifying forestland at one time, but that such an intent changed when Lillian Logan transferred title to the property to the LLC in 2005, an entity with a stated purpose of owning, leasing and otherwise dealing in real estate. Plaintiff then pursued development of the subject property in 2006 and 2007 following the clear-cut harvest of the subject property in 2001, which generated slightly more than $72,000 of income from the sale of merchantable timber plus some amount of firewood. The most probable construction of those facts is that the primary intent has been to generate revenue (*i.e.* a profit motive), whether through the growing and harvesting of trees or through the potentially more lucrative subdivision development. It is unclear to the court why efforts to develop the property were abandoned, but the likely reason is economic factors including the cost of development (because of all the requirements to be satisfied associated with the overlay zones) and the uncertainty about whether the subdivision would have been approved by the City, given the various environmental overlays discussed above, plus the emerging poor housing market, which likely would have delayed the return on investment from the sale of lots.

The burden to demonstrate eligibility for special assessment during the tax year at issue falls to Plaintiff. ORS 305.427. The evidence reveals that all prior forestland activities were conducted by Plaintiff's predecessor, Lillian Logan, who then transferred title to the property to the Plaintiff LLC for purposes of pursuing real estate development. It is insufficient to state that the prior owner is now the sole member of Plaintiff; as a separate entity, Plaintiff has an intent that is legally distinct from its member, one which must be determined from objective evidence. Although not required to do so, a taxpayer may complete a forest management plan to affirmatively demonstrate the taxpayer's intention to continue managing property as forestland. *Cf. Goucher*, TC-MD No 111012C at 6. Plaintiff did not develop a forest management plan for the subject property. Plaintiff has failed to bring to the court's attention any intervening events

DECISION  TC-MD 111234C                                                                          10

between the replanting of the subject property in 2001, the apparent change of intent between 2005 and 2007, and the tax year at issue (2011-12) that demonstrate Plaintiff's intention to grow and harvest trees of a marketable species as contemplated by the forestland special assessment statutes.

The parties do not disagree that the current zoning overlays may not present a bar to the future harvest of timber on the subject property. Although Plaintiff demonstrated a past intent by the prior owner to manage the property as forestland, Plaintiff has failed to take affirmative steps to demonstrate that same objective by the current owner for the 2011-12 tax year.

### III. CONCLUSION

After careful consideration of the testimony and evidence presented, the court finds Plaintiff has failed to establish by a preponderance of the evidence that the subject property qualifies as "forestland" for special assessment under ORS 321.257(2). Now, therefore,

IT IS THE DECISION OF THIS COURT that Defendant's disqualification of Account R324603, from the western Oregon designated forestland special assessment program for tax year 2011-12 must be upheld; Plaintiff's appeal is denied.

Dated this ___ day of December 2012.

_____
DAN ROBINSON
MAGISTRATE

*If you want to appeal this Decision, file a Complaint in the Regular Division of the Oregon Tax Court, by <u>mailing</u> to: 1163 State Street, Salem, OR 97301-2563; or by <u>hand delivery</u> to: Fourth Floor, 1241 State Street, Salem, OR.*

*Your Complaint must be submitted within <u>60</u> days after the date of the Decision or this Decision becomes final and cannot be changed.*

*This Decision was signed by Magistrate Dan Robinson on December 11, 2012. The Court filed and entered this Decision on December 11, 2012.*