IN THE OREGON TAX COURT
MAGISTRATE DIVISION
Income Tax

| | | |
|---|---|---|
| STEVEN DAVID WILLIAMS and JEANNETTE MAE WILLIAMS, | ) ) ) | |
| Plaintiffs, | ) ) | TC-MD 130420C |
| v. | ) ) | |
| DEPARTMENT OF REVENUE, State of Oregon, | ) ) ) ) | |
| Defendant. | ) | **FINAL DECISION** |

The court entered its Decision in the above-entitled matter on January 21, 2014. The court did not receive a request for an award of costs and disbursements (TCR-MD 19) within 14 days after its Decision was entered. The court's Final Decision incorporates its Decision without change.

Plaintiffs filed their appeal challenging Defendant's Notice of Deficiency Assessment, dated May 31, 2013, for tax year 2009. (Ptfs' Compl at 1-4.) Trial in the matter was held in the Tax Courtroom in Salem, Oregon, on October 28, 2013. Plaintiffs appeared on their own behalf. Defendant was represented by John Koehnke (Koehnke), Tax Auditor, Oregon Department of Revenue.

Plaintiff's Exhibits 8 through 26 and Defendant's Exhibits A and C were admitted at trial without objection.

Although Defendant made several adjustments to Plaintiffs' 2009 Oregon return, at the time of trial, the parties advised the court that all of the issues concerning the adjustments were resolved except one: Plaintiffs' reported $3,725 Schedule C contract labor deduction. Trial focused solely on that issue.

## I.  STATEMENT OF FACTS

Plaintiffs filed joint federal and state income tax returns for 2009.  (Def's Ex A at 1-3.) Plaintiff Steven Williams had W-2 wage income from two different employers in 2009 and a small amount of earnings reported on a 1099-R.  (Def's Ex A at 5-7.)  Plaintiff Jeannette Williams (Jeannette) operated a child care (daycare) business out of Plaintiffs' home that year.[1] On their 2009 federal Schedule C, Plaintiffs reported gross receipts of $34,619 from the operation of Jeannette's in-home daycare business.  (Def's Ex A at 9.)  After deducting various expenses, including contract labor in the amount of $3,725, Plaintiffs reported a net loss of $5,411 from the daycare business.  (*Id.*)

Plaintiffs have five grown children who, according to Plaintiffs' sworn testimony, are in their late teens or early 20s.  Plaintiffs testified that their children would occasionally work for Jeannette when she was either away from home on personal business, not feeling well (*i.e.*, sick), or in need of some time away (*e.g.*, shopping, walking the dog, attending church functions, or at the library).  (*See* Ptfs' Ex 8.)  Jeannette testified that she "paid" her children when they worked for her by watching the children in her daycare business.  Jeannette testified that payments were not actually ever specifically made to Plaintiffs' children.  Instead, Jeannette subtracted amounts earned by the five children from monies they owed Plaintiffs for expenses Plaintiffs paid on their behalf for items such as gasoline, car insurance, school related costs, clothing, dental care, eyewear, travel and entertainment.  (Ptfs' Exs 14-17.) Jeannette kept an accounting ledger that tracked the payments Plaintiffs made on behalf of their children and the income the children earned (*i.e.*, she tracked the items as debits and credits).  (*Id.*)

---

[1] When referring to a party in a written decision, it is customary for the court to use the last name. However, in this case, the court's decision recites facts and references to more than one individual with the same last name, Williams.  To avoid confusion, the court will use the first name of the individual being referenced.

Plaintiffs testified that they considered their children to be old enough to pay their own bills but, as is not uncommon with young adults, they were at times short on cash. Jeannette kept a contemporaneous, detailed log of the loans she and her husband extended to their children and the money their children earned working for Jeanette's daycare business or performing other tasks for Plaintiffs. (Ptfs' Exs 14-17). Jeannette testified that she not only recorded the expenses she paid for her children and the credits they earned for working for her, but emailed a copy of that running spread sheet document to herself in case something went wrong with the computer. According to Jeannette's testimony, other expenses and payments (debits and credits) were recorded in a spiral binder. Jeannette's records include dates, dollar amounts paid and earned, and the reason for the payments. (*Id.*) Jeannette testified that she kept her records contemporaneously because she wanted to make sure that she had an accurate and up-to-date accounting of the money the children owed her.

Plaintiffs also submitted a similar but more detailed summary of all of the "wages" earned by Plaintiffs' five children. (Ptfs' Ex 8.) That document has five columns. (*Id.*) The first column identifies the date the child worked for Jeannette, the second column identifies the amount of wages earned, the third column identifies which of Plaintiffs' five children earned the wages, the fourth column identifies the time period during which the children worked for Jeannette (*e.g.*, 6:30-8:00 PM), and the fifth column identifies the reason Jeannette was away from her business. (*Id.*)

According to the evidence and testimony at trial, Victoria Williams earned $35 in 2009, Steven Williams earned $595 that year, Elizabeth Williams earned $500, Alexandra Williams earned $530, and Anastasia Williams (Anastasia) earned $2,065. (Ptfs' Exs 22-26.) Jeannette

/ / /

testified that Plaintiffs did not issue W-2s or 1099s to any of their children for the work their children performed for Jeannette's daycare business in 2009.

## II. ISSUE

The only issue in this case is whether Plaintiffs are entitled to deduct $3,725 for "contract labor" as reported on their 2009 Schedule C.

## III. ANALYSIS

The Oregon legislature intended to make Oregon personal income tax law identical to the Internal Revenue Code (IRC) for purposes of determining Oregon taxable income, subject to adjustments and modifications specified in Oregon law. ORS 316.007(1).[2] The legislature sought to "[a]chieve this result by the application of the various provisions of the [IRC] relating to the definition of income, exceptions and exclusions therefrom, [and] deductions (business and personal) * * *." ORS 316.007(2). This case involves the deductibility of a claimed business expense governed by state statute and provisions of the IRC.

The burden of proof in the Tax Court is a "preponderance of the evidence[,] [and] * * * fall[s] upon the party seeking affirmative relief" which, in this case, is Plaintiffs. ORS 305.427. The Oregon Supreme Court has stated that:

> " 'Preponderance' derives from the Latin word 'praeponderare,' which translates
> to 'outweigh, be of greater weight.' 8 Oxford English Dictionary 1289 (1933).
> With regard to the burden of proof or persuasion in civil actions, it is generally
> accepted to mean the greater weight of evidence."

*Riley Hill Gen. Contractor, Inc. v. Tandy Corp.*, 303 Or 390, 394, 737 P2d 595 (1987). This court has previously ruled that "[p]reponderance of the evidence means the greater weight of evidence, the more convincing evidence." *Feves v. Dept. of Rev.*, 4 OTR 302, 312 (1971) (citation omitted).

---

[2] The court's references to the Oregon Revised Statutes (ORS) are to 2007.

Plaintiffs appealed Defendant's adjustment to their 2009 Schedule C disallowing a deduction in the amount of $3,725 reported for contract labor. The amount in dispute involves payments allegedly made by Plaintiffs to their five grown children for personal services rendered by Plaintiffs' children in connection with Jeannette's in-home daycare business. Plaintiffs' children were not treated as employees of the business, but, instead, worked occasionally on an as-needed basis and are therefore treated as contract laborers.

ORS 305.217 provides:

> *"No deduction shall be allowed* under ORS chapter 316, 317 or 318 to an individual or entity *for amounts paid as wages* or as remuneration for personal services *if that individual or entity fails to report the payments as required by* ORS 314.360 or *316.202* on the date prescribed therefor (determined with regard to any extension of time for filing) unless it is shown that the failure to report is due to reasonable cause and not done with the intent to evade payment of the tax imposed by ORS chapter 316 or to assist another in evading the payment of such tax."

(ORS 314.360 relates to reporting requirements for fiduciaries, etc.; ORS 316.202 governs employer reporting of taxes on wages paid to employees) (emphasis added).

Defendant promulgated an administrative rule intended to carry out the purposes of ORS 305.217. That rule largely echoes the statute, including the requirement that an employer file 1099s, but includes a limited exception where the employer can prove there were "circumstance[s] beyond the employer's control that caused the failure to file" the 1099. OAR 150-305.217(2). The rule provides in relevant part as follows:

> "(1) An employer will not be allowed a deduction for wages or payments to individuals for personal services rendered if:

> "(a) The employer does not file any information returns, such as 1099's or W-2's, as required by federal law, ORS 314.360 or 316.202; or

> "* * * * *

> / / /

"(2) In the case of a failure to file as described in subsection (1)(a) of this rule, the expense will be allowed if the employer can show there was a circumstance beyond the employer's control that caused the failure to file returns as required by law. Refer to OAR 150-305.145(4) for examples of situations that are accepted by the department as a circumstance beyond the employer's control."

OAR 150-305.217.

Plaintiffs acknowledge that they did not issue their daughter, Anastasia, a federal 1099 despite the fact that she earned wages in excess of $600, which is the legal threshold under the federal tax code, IRC section 6041(a), the relevant language from which is set forth below. Moreover, Plaintiffs have not alleged that there were circumstances beyond their control that caused them to fail to file a 1099 for Anastasia, as provided in OAR 150-305.217(2). Rather, Plaintiffs have requested that the court allow them to deduct the entire amount reported as contract labor, including the $2,065 paid to Anastasia, notwithstanding the fact that no 1099 was issued by Plaintiffs because the amounts reported were actually paid to their children for services rendered.

IRC section 6041(a) requires persons engaged in a trade or business who pay another person $600 or more in any taxable year to issue a 1099 to that person. The IRC provides in relevant part:

"*All persons* engaged in a trade or business and *making payment* in the course of such trade or business to another person, *of* rent, salaries, *wages* * * * compensations, remunerations, * * * or other fixed or determinable gains, profits, and income * * * *of $600 or more in any taxable year* * * * *shall render a* true and accurate *return* to the Secretary, under such regulations and *in such form and manner* and to such extent *as may be prescribed by the Secretary, setting forth the amount of such gains*, profits, and income, and the name and address of the recipient of such payments."

26 USC § 6041(a) (emphasis added).

Defendant's primary concern expressed at trial was substantiation. During his trial testimony, Koehnke also stressed the fact that Plaintiffs neglected to file a federal 1099 for

Anastasia. Koehnke insists that the failure to issue the 1099 precludes Plaintiffs from deducting the contract labor expenses allegedly paid to Anastasia. As stated above, Anastasia is the only one of Plaintiffs' five children who earned contract labor payments in excess of $600 and Plaintiffs did not issue her a 1099; she was paid $2,065.

Jeannette acknowledged that she was not familiar with all the nuances of tax law, but explained that the reason she did not issue Anastasia a 1099 was because her daughter did not earn over $5,700, and was therefore not required to file a federal income tax return. That being the case, Jeannette testified that she did not think there was "any point" in issuing Anastasia a 1099. Jeannette did testify that they adjusted the operation of her in-home business, and now understood the importance of issuing 1099s to any individuals performing contract labor for personal services.

Koehnke testified that, although certain of Plaintiffs' exhibits do indicate that Plaintiffs paid their children for contract labor, there is insufficient evidence from which to substantiate that the payments were actually ever made. Koehnke argued during closing that, in his opinion, the outcome of the case rested on the question of substantiation, not whether the payments were made. He stressed that, from his perspective, Plaintiffs lacked adequate proof of payment and that Plaintiffs were required by law to issue a 1099 to Anastasia, citing IRC section 6041, ORS 305.217, and OAR 150-305.217.

Koehnke further noted at trial that the Internal Revenue Service instructions for completing the Schedule C state in relevant part that employers are to:

> "[e]nter the total cost of contract labor for the tax year * * * to persons you do not treat as employees (for example, independent contractors) for services performed for your trade or business. * * * *You must file Form 1099-MISC, Miscellaneous Income, to report contract labor payments of $600 or more during the year*."

(Def's Ex C at 29-30 (emphasis added).)

Jeannette did the majority of the testifying and struck the court as very credible. Her records are also very detailed; they are in chronological order and strike the court as very reliable. Moreover, when questioned by the court, Jeannette testified that she kept her records contemporaneously because she wanted to make sure that she had an accurate and up-to-date accounting of the money the children owed her. The court finds that to be a very reasonable and logical explanation for keeping the records. Moreover, as indicated above, Jeannette submitted considerable documentation that demonstrated to the court's satisfaction that she was quite meticulous in her accounting system for the money the children owed, and the "payments" (wages) they received in the form of a credit against their outstanding liability. Some records were kept on Plaintiffs' computer (Ptfs' Exs 14-15), with Jeannette testifying under oath that she not only recorded the expenses she paid for her children and the credits they earned for working for her (*i.e.*, her payment to them), but emailed a copy of that running spread sheet document to herself in case something went wrong with the computer (*i.e.*, as a "backup"). Other expenses and payments (debits and credits) were recorded in a spiral binder (Ptfs' Exs 16-17).

The court is persuaded that there is sufficient evidence to establish that Plaintiffs paid a total of $3,725 in contract labor to the five children. However, both state and federal law require that an employer paying wages of $600 or more to a person who is not an employee, for services rendered for contract labor, file a 1099. Because Plaintiffs did not file a 1099 for Anastasia, who earned over $600 in wages for personal services for Jeannette's in-home daycare business, Plaintiffs may not deduct the $2,065 they paid her, which they reported on their Schedule C. The court is persuaded that Plaintiffs did make the payments reported on their Schedule C and, because 1099s were not required to be filed for the other four children who worked for Jeannette,

the balance of the contract labor expenses reported, which totals $1,660, is allowed as a deduction.

### III. CONCLUSION

The court concludes that Plaintiffs are entitled to a contract labor deduction in the amount of $1,660, but that the $2,065 paid to Anastasia Williams is not allowed as a deduction because ORS 305.217, OAR 150-305.217, and IRC section 6041(a), preclude a deduction for payment of wages of $600 or more in any taxable year for personal services if the employer making the wage payments does not file the required form. IRC section 6041(a), as applicable to this case, required Plaintiffs to file a 1099, which Plaintiffs did not file. Now, therefore,

IT IS THE DECISION OF THIS COURT that for tax year 2009, Plaintiffs are entitled a to a contract labor deduction in the amount of $1,660.

IT IS FURTHER DECIDED that Defendant shall revise its Notice of Deficiency Assessment dated May 31, 2013, to reflect the court's Decision.

Dated this ____ day of February 2014.

_____
DAN ROBINSON
MAGISTRATE

*If you want to appeal this Final Decision, file a Complaint in the Regular Division of the Oregon Tax Court, by <u>mailing</u> to: 1163 State Street, Salem, OR 97301-2563; or by <u>hand delivery</u> to: Fourth Floor, 1241 State Street, Salem, OR.*

*Your Complaint must be submitted within <u>60</u> days after the date of the Final Decision or this Final Decision cannot be changed.*

*This document was signed by Magistrate Dan Robinson on February 10, 2014. The Court filed and entered this document on February 10, 2014.*